GILMAN *v.* GILMAN.

New York County—HON. EDWARD C. WEST, Surrogate—May, 1861.

# Gilman *v.* Gilman.

## *In the Matter of proving the Last Will and Testament of* Nathaniel Gilman, *deceased.*

The desk whereat the testator and one of the subscribing witnesses sat when the testator subscribed the will, and the witness signed, was separated from the desks where the two other witnesses sat by a brick wall or column, four feet broad; but it did not appear that their positions rendered their seeing the testator impossible, or that the two compartments were considered as separate offices. The witness who had already subscribed requested the two other witnesses to witness the will, at the request and in the hearing of the testator, in the words: "Mr. Gilman (the testator) requests you to witness his will." The instrument (already signed by the testator, and attested by one of the witnesses) was then signed by the two other witnesses, in the presence of, but without any further request or declaration by, the testator.

*Held,* 1. That the witnesses all signed substantially in the presence of each other, and in the presence of the testator, within the meaning of the statute.

2. That the intent to execute his last will was thereby published and declared, and was also acknowledged by the testator, and the witnesses were by him requested to become attesting witnesses.

The will and the codicil were written on one side of the page of several sheets, which were folded and tied together in the form of a book, leaving alternate pages blank. The codicil following the will, ended at the bottom of a page, where the testator signed his name, leaving no room for the attestation clause and signatures of the witnesses. To carry out the method of writing only on one side of each sheet, the attestation clause and subscription of the witnesses were written on the second page after the testator's signature, leaving an entire blank page between them.

*Held,* That this was a subscription "at the end" within the meaning of the statute.

An instrument is signed at the end, when nothing intervenes between the instrument and the subscription.

The fact that the testator died in another State, where proceedings were taken and letters testamentary granted, before any proceedings were had on the will here, does not prevent the surrogate having jurisdiction to prove the will, where assets are shown to be here. The offer to show that the testator was a non-resident and a non-inhabitant of this State, refused.

The Surrogate's Court is always open. The absence of the surrogate, or of the parties, on an adjourned day, does not abate the proceedings or put the case out of court.

On the petition of George F. Gilman, claiming to be an executor named in the last will and testament of Nathaniel Gilman, deceased, a citation was issued to the widow, heirs, and next of kin, to have the will proved.

The instrument propounded bore date April 10, 1858, and was alleged to have been executed in the city of New York, in the presence of William Miles, Samuel Hurley, and Alex. C. Collins, as attesting witnesses. The paper propounded for probate as a codicil to the will, bore date the day of decedent's death, December 19, 1859, and was executed at Waterville, Me. Neither the attestation clause of the will, nor that of the codicil, declare that the subscription of the testator was made in the presence of the witnesses, or was acknowledged by him to them.

The will was subscribed and witnessed at the office of Hurley & Miles, 80 Gold-street. Between the desk at which the testator sat, and the desk at which the witnesses Collins and Hurley sat, there was an upright wall or column of brick, about four feet wide, partially hiding them from each other. Miles was sitting with the testator; and the testator having subscribed his name, and Miles attesting as a witness, the latter called to Hurley and Collins, saying that "Mr. Gilman wanted them to witness his will." Hurley and Collins came in and subscribed their names. It did not appear that the testator said any thing to them about the will. But it did appear that Miles had told them before that they would be called upon to witness Mr. Gilman's will. It was contended that this was not a subscription in the presence of the testator, and that there was no publication of the will.

The will and codicil were written on only one side of several sheets, which were folded and tied together in the form of a book, thus leaving alternate blank pages. At the bottom of the last page of the codicil, there was not space for the attestation clause and subscription of the wit-

nesses. The attestation clause and subscription of the witnesses were written on the second page following, thus leaving an entire blank page between the codicil and the subscription.

It was contended, on the part of the contestants, that this was not a subscription " at the end," within the meaning of the statute.

JAMES M. SMITH *on behalf of Anna K. Gilman, executrix, and Charles B. Gilman, one of the executors,.*

objected, on the return of the citation, to the proof of the will, on the ground that the testator was not an inhabitant of this State, and did not die in this State, but was an inhabitant of Maine, and died at Waterville, in that State; and that the will was taken from that State and brought here for probate, without the consent of the executrix and the widow. And also on the further ground, that proceedings had been taken in the State of Maine, before any proceedings were had before the surrogate of the county of New York, before a court having competent jurisdiction in the State of Maine, and letters testamentary granted. Mr. Smith offered to show that the testator was a non-resident of the State of New York, and was a resident and inhabitant of Waterville, in the State of Maine, at the time of his decease, and also that letters of administration had been granted on the estate before these proceedings were taken; and claimed the right to show it before any further proceedings were taken.

ALEXANDER W. BRADFORD, *for special Guardian of Minors.*

The surrogate has jurisdiction to prove the will, independently of the question of domicil, for the reason that there are assets here. Though the statute authorizes probate here on the production of a foreign probate, when the testator's domicil was out of the State, that provision is in addition to the ordinary jurisdiction of the surrogate, and not in exclusion of his power to grant original probate. The foreign probate has no force in respect to real estate in this State.

THE SURROGATE.—The objection and offer on the part of the contestants are overruled.

---

The hearing of testimony as to the due execution of the will was had from time to time, up to December 20, 1860, shortly after which the surrogate went to the South, on account of his health, and the hearing was adjourned to the 8th of March, 1861. On that day, the counsel for the contestants attended, but no one appeared for the proponents, and the surrogate's clerk adjourned the hearing to May 24th, 1861. On the adjourned day the surrogate appeared.

WILLIAM TRACY, *for the Contestants,*

objected to going on with the case, on the ground that the case was out of court; and read his own affidavit, that on the 8th of March, he attended at the Surrogate's Court; that no counsel were present on the part of the proponents; that the surrogate was absent, not to return before April; and that Mr. Van Cott, the surrogate's principal clerk, entered an order, without consent of counsel, adjourning the cause. (*Willard*, 35, 432; 2 *Rev. Stat.*, 4 ed., 94, § 64, 421.)

MR. BRADFORD, *in reply.*

1. To derive any benefit from the objection, there should have been a motion to vacate or rescind the order of adjournment, or an appeal should have been taken from the order itself. 2. The Surrogate's Court is always open. In this respect, its capacity exceeds that of all other courts, which have their terms or limits of session. (2 *Rev. Stat.*, 221, § 2.) 3. This extraordinary provision was designed for the purpose of excluding technical objections. For the same reason, no rules of practice or pleading were prescribed. When the case is brought within the jurisdiction of the court, it is competent, " at all times," to have " a hearing." 4. If the surrogate be absent, or the office be vacant, a substitute is provided. (2 *Rev. Stat.*, 79.) 5. But the statute specially provides that whenever the county court, &c., " *or*

*any Surrogate's Court*, appointed to be held in any county, shall fail, no writ, process, recognizance, or other proceeding, returnable at, or to be heard or tried in said court, shall be abated, discontinued, or rendered void thereby." (*Laws of* 1847, ch. 280, § 28 ; 3 *Rev. Stat.*, 5 ed., 305, § 24.)

THE SURROGATE.—The objection must be overruled.

### CHARLES H. GLOVER, *for the Contestants.*

I. None of the statutory requirements in respect to the execution of the will were complied with. The testator did not subscribe the will in the presence of the witnesses; nor acknowledge the subscription to them; nor " declare the instrument so subscribed to be his last will and testament;" nor did they sign their names as witnesses at his request. The subscribing witness, Miles, expresses doubt whether the will was subscribed by the decedent before or after Hurley and Collins, the other witnesses, left the desk. Hurley is positive, that when he came to the table, the will already had Gilman's signature, and Collins came to the table after Hurley. The will was not subscribed, then, in the presence either of Hurley or of Collins, unless their situation at the desk constituted such presence, within the meaning of the statute. It did not constitute such presence. Hurley, the senior partner, and Collins, the book-keeper, in the offices where the will was signed, were standing at their counting-room desk. Hurley was some fifteen feet from decedent, with his back towards him, and between him and decedent was the brick wall, four feet wide. It is impossible that he should have seen the decedent subscribe the will. Collins was at the other side of the desk. He was, therefore, some twenty feet from the decedent, and between him and decedent were Hurley, the brick wall, and Miles, who was sitting with the testator. It is evident that he could not have seen decedent sign, unless he left his position and walked two or three steps towards one of the openings. The affirmative was with the proponents, and they did not offer any evidence that

Collins did not change his position. And the failure of Collins to recollect any thing of the transaction, shows that it did not excite his curiosity or attract his attention. The language employed by the witnesses in speaking of the offices, shows that they habitually recognized a virtual separation between them.

II. What is the meaning of the words " *in the presence of,*" as employed in the statute? 1. The Statute of Frauds required the *witnesses* to a will of lands, to attest it in the presence of the *testator.* The current of authorities has interpreted the meaning of the phrase in this latter statute as follows. If the testator and the witnesses were in the same room, that was ordinarily sufficient; unless the will was signed by the witnesses clandestinely, in a corner. (*Longford* v. *Eyre,* 1 *P. Wms.,* 740.) Or the testator was mentally incapable of recognizing the presence of the witnesses. (*Right* v. *Price,* 1 *Doug.,* 241.) Or, by reason of physical weakness, was unable to put himself in a position from which he could see them. (*Neil* v. *Niel,* 1 *Leigh.,* 6.) Or there was a physical obstruction between testator and the witnesses, which prevented him from seeing them without changing his position. (*Brooks* v. *Duffell,* 23 *Geo.,* 441.) But if the testator and the witnesses were in different rooms, the evidence must show affirmatively that the testator could have seen them subscribe without changing his position. (*Wright* v. *Manifold,* 1 *M. & S.,* 294; In re *Colman,* 3 *Curt.,* 118; *Todd* v. *Winchelsea,* 1 *Moody & Malkin,* 12; 2 *C. & P.,* 488; *Winchelsea* v. *Wauchope,* 3 *Russ. Ch.,* 441; *Clerk* v. *Ward,* 4 *Brown's Ca. in P.,* 71; *Graham* v. *Graham,* 10 *Iredell,* (*N. C.*) 219; *Jones* v. *Tuck,* 3 *Jones* (*N. C.*), 202.) And since the new Statute of Wills, the English courts interpret the words with still greater strictness. (*Tribe* v. *Tribe,* 13 *Jur.,* 793; 1 *Rob. Ecc. R.,* 775; *Norton* v. *Bazett,* 3 *Jur.* [*N. S.*], 1084.) If these rules of interpretation are applied to this case, it must be decided that the testator did not subscribe in the presence of Hurley and Collins. 2. But it is submitted that the words, as used in our statute, should be inter-

preted more strictly than like words in the Statute of Frauds. Our statute was passed to prevent the mischiefs which had resulted from the lax interpretation of the Statute of Frauds. Its words should, therefore, be construed with greater strictness than like words in the old statute. (*Remsen* v. *Brinckerhoff*, 26 *Wend.*, 325 ; *Seymour* v. *Van Wyck*, 2 *Seld.*, 120 ; *Chaffee* v. *Baptist Miss. Con.*, 10 *Paige*, 85 ; *Lewis* v. *Lewis*, 13 *Barb.*, 17 ; 1 *Kern.*, 220 ; *Tonnele* v. *Hall*, 4 *Comst.*, 140 ; *Whitbeck* v. *Patterson*, 10 *Barb.*, 608 ; 4 *Kent*, 515 ; *Dewey* v. *Dewey*, 1 *Metc.*, 349 ; *Seguine* v. *Seguine*, 2 *Barb.*, 385.)

III. The codicil was not duly executed, as the witnesses did not sign their names "at the end," as required by the statute. The provision of the statute requiring such a subscription was intended—1. To protect the testator against the interpolation of fraudulent additions to the will between the end of it and the signatures of the witnesses. (*M'Guire* v. *Kerr*, 2 *Bradf.*, 244.) 2. To protect the heir against the interpolation, by the testator himself, of new testamentary provisions after the final execution of the will. (*Smee* v. *Bryer*, 1 *Rob. Ecc. R.*, 616 ; *Ayres* v. *Ayres, Id.*, 466 ; In re *John Scarlett*, 4 *Notes of Cases*, 480.) In the present case, the object of the statute might easily be defeated. Without taking the blank left-hand page into consideration, the intervening blank space is amply sufficient for the purpose mentioned. Had the testator, after the departure of the witnesses, chosen to insert a new codicil, between the end of the codicil now propounded and the attestation clause, such new codicil must, upon the evidence in the case, have been admitted to probate.

ALEXANDER W. BRADFORD, *for Proponent.*

The codicil was duly executed. 1. There was no room to attest on the last page of the codicil, and it was necessary to turn the page over. 2. But the testator having adopted the mode of writing on a single page of a sheet, leaving the alternate page blank, the attestation, according to the same plan, was on the proper page. All the sheets being bound

together, and no testamentary provision or writing, except the attestation clause, appearing between the end of the codicil, the testator's subscription, and the subscription of the witnesses, they substantially complied with the statute, and subscribed at the end of the codicil. In England, wills are commonly written in solicitors' offices, on the alternate sides of the paper. (*Case of Batten*, 2 *Rob.*, 125; *Case of Bauly*, 1 *Id.*, 643.) In *Bauly's Case* the first page was filled, the second left blank, and the signature placed at the top of the third page. Sir H. J. Fust said: "If the signature is not valid, I know not where it could have been placed. I decree probate." The connection of the several sheets of a will may be partly inferred from the sense. (*Marsh* v. *Murray*, *Law Jour.*, 1861, 77.)  3. The act of 1 Victoria required the will to be signed at the foot or end thereof. (16 *Lond. Jur.*, 1852, part 2, 4131; *Law Jour.*, 1852, part 3, 14.)  At first the court inclined to a very liberal interpretation of the statute. (*Woodington's Case*, 2 *Curt.*, 324; *Carver's Case*, 3 *Id.*, 29; *Powell's Case*, 1 *Rob. Ecc. R.*, 421; *Jones' Case*, 1 *Rob.*, 424; *Gunning's Case*, *Id.*, 459.)  After this the court grew more strict. The leading cases are *Ayres* v. *Ayres* (1 *Rob.*, 466); *Willis* v. *Lowe* (*Id.*, 618, note); *Smee* v. *Bryer* (1 *Id.*, 619.) In *Willis* v. *Lowe*, the will was written on a sheet of letter-paper, measuring in height $9\frac{1}{10}$ inches. The first page was completely covered with writing. The writing on the second page commenced at the top, and ended at a distance of $5\frac{6}{10}$ inches. The remainder of the second page was blank, measuring $3\frac{5}{10}$ inches, a sufficient space for the signature of the testatrix, as well as for the attestation clause, with the names of the witnesses; a space of two inches from the top of the third page was blank, and then followed the attestation clause, with the signature of the testatrix and witnesses. The will held not to be signed at the foot or end. In *Ayres* v. *Ayres*, the will ended on the first sheet, three lines above the end. Rather more than half the next page was left blank. Then came the attestation clause, and after that the names of testator and witnesses. There were many altera-

tions and obliterations, not noted, on the first page. There was no disposition of the residue. Two of the three attesting witnesses, one being dead, swore that, "save as to the testator's signature, they took no notice whatever of the said paper, and that no person besides themselves and the said James Wall (dead) was present with the deceased at the time of the execution." In *Smee* v. *Bryer*, there was a space of $\frac{8}{10}$ of an inch at the end of the will on the third page, where the signature of the testatrix might have been "squeezed in." It was, however, placed far down the fourth page. On the fourth side there was a memorandum of attestation, together with the names of two witnesses to an interlineation : half way down commenced a long attestation clause, occupying half the width of the page : opposite the third line of the attestation clause to the right, was the signature. The signature was more than four inches below the memorandum of interlineation. The court said that the paper was not signed " at the foot or end," and that in future it would adhere more closely to the words of the statute. The case went to the Privy Council, who sustained the decision, but refused to lay down any principle to govern future cases. They suggest that common sense should govern. In *Corder's Case* (1 *Rob.*, 669), two inches of the last line of first page were blank, and under that a blank of one inch and $\frac{2}{10}$ ; the second page was wholly blank ; the third commenced with a testimonium clause, including a revocation of all former wills, and the signature of the testatrix was written one inch $\frac{8}{10}$ below that clause ;—*held*, to be signed at the foot or end. The Wills Act does *not* require a will to be written continuously. In *Howell's Case* (1 *Rob.*, 671), one and $\frac{7}{10}$ inches left blank on the last line of the first page, and one inch and $\frac{2}{10}$ below, and the signature of the testatrix on the second page, opposite to the third line of the attestation clause. The will was rejected with reluctance. *Ensell's Case* (1 *Rob.*, 702): Blank on last line of one inch and $\frac{6}{10}$, then below a blank of $\frac{5}{10}$ of an inch, and the signature of testator $\frac{8}{10}$ of an inch below the top of the second page.

GILMAN *v.* GILMAN.

Will rejected with reluctance, in order that it might go to the judiciary committee. In *Harris's Case* (1 *Rob.*, 703), $\frac{4}{10}$ of an inch between the testimonium and the attestation, $\frac{6}{10}$ between the attestation and signature. The will allowed. In *Brown's Case* (1 *Rob.*, 710), $\frac{7}{10}$ of an inch on second page, between the dispositive part and the third page; then attestation clause on the third page; then a blank of $\frac{5}{10}$ of an inch; then the signature of attesting witnesses; then blank of $\frac{7}{10}$ of an inch; then the signature of testator. *Held*, properly signed. In *Beadon's Case* (2 *Rob.*, 139), where $2\frac{3}{10}$ inches were left between the testimonium clause and the signature, *the will was rejected.* In *Dawnay's Case* (2 *Rob.*, 178), the signature was one and $\frac{4}{10}$ of an inch below the attestation clause. The will was sustained. In *Hearn's Case* (2 *Rob.*, 112), one inch and $\frac{8}{10}$ lay between the testimonium and the attestation clause. The testimonium was imperfect, and the signature was nearly three inches below the testimonium, opposite the fourth line of the attestation clause. The will was rejected. In *Holbech* v. *Holbech* (2 *Rob.*, 126), there was a blank of three and $\frac{3}{10}$ inches at the foot of the second page, and two and $\frac{2}{10}$ on the third. Then came the signature. The will was rejected. In *Howell's Case* (2 *Rob.*, 197), four and $\frac{1}{2}$ inches were blank, and the will filled with erasures. It was rejected. In *Holland's Case* (2 *Rob.*, 196), though a considerable blank was left ($1\frac{6}{10}$ inches) between the testimonium and the attestation, yet a large part of the will being above the signature, in the same page, it was sustained. In *Prentice's Case* (2 *Rob.*, 182), one inch and $\frac{3}{10}$ was blank; the will was admitted. In *Welsh's Case* (2 *Rob.*, 179), $\frac{6}{10}$ of an inch was blank between the attestation and the testimonium, the testator's signature two inches and $\frac{6}{10}$ below the last line of the will. Probate was allowed. In *Shadwell's Case* (2 *Rob.*, 140), a barrister-at-law made a will on notepaper, leaving a blank of one inch and $\frac{3}{4}$ at the foot of the second page. On the third he placed a short testimonium, and then his signature. *Held*, that it should have been signed on the second page. The will was rejected. In *Rowe's Case*

GILMAN *v.* GILMAN.

(2 *Rob.*, 199), $4\frac{3}{10}$ inches were left blank on the last line; with $\frac{3}{10}$ of an inch space below it: the signature was placed $2\frac{3}{10}$ inches from top of next page. *Held*, not duly executed. In *White's Case* (2 *Rob.*, 194), the principle was laid down, that where a part of the will was above the signature on the same page, there was a reasonable compliance with the statute. In *Helling's Case* (1 *Rob.*, 753), four inches were left blank on third page, yet, testatrix being blind, the will was allowed. *Wood's Case* (2 *Rob.*, 180), was of the same general tenor. Small blanks were overlooked, and probate was allowed.

THE SURROGATE decided that the instrument offered for probate was the last will and testament, and codicil thereto of the said testator, and as such was valid· as a will of real and personal estate; and the same was admitted to probate as a will of real and personal estate.

An appeal from the decree of the surrogate admitting the will, was taken by the contestants to the Supreme Court, where an affirmance was had, with an opinion by LEONARD, J.*

BY THE COURT.—LEONARD, J.—I. The will in question was well executed. The testator and the witnesses were all in the same room at the moment the attestation was signed. The witnesses all signed, substantially, in the presence of each other, as well as in the actual presence of the testator, within the meaning of the statute.

So far as the witness Miles is concerned, the will was actually signed in his presence. Miles, at the request of the testator, and in his hearing, requested the two other witnesses, Hurley and Collins, then present in the same room, to witness the will in these words: " Mr. Gilman requests you to witness his will." The instrument was then produced, already signed by the testator, and in his presence signed by Hurley and Collins as witnesses. The testator had pre-

* SUPREME COURT, *General Term, November,* 1862. Present, INGRAHAM, LEONARD, and BARNARD, JJ.

viously requested Miles to have these persons present to witness the execution of his will, and to be present himself.

The testator understood the business which was then being transacted. He made no objection to the declaration or request made by Miles in his presence and hearing, but proceeded to consummate the business for which he came there, the execution and attestation of his will. The intent to execute his last will was thereby published and declared, and was also acknowledged by the testator, and the witnesses were by him requested to become attesting witnesses.

II. The codicil is also well executed. An instrument is signed at the end, when nothing intervenes between the instrument and the subscription.

Who shall undertake, judicially, to say that the subscription shall be one-eighth of an inch, one-half an inch, two inches, or ten inches from the last line of the instrument? The distance from the last line has not been fixed by statute. The place named in the statute is the end. The end of an instrument in writing commences and continues until something else or some other writing occurs.

These principles are, I think, in conformity with the spirit of the decisions in this State in respect to the execution of testamentary instruments.

III. The decree of the surrogate, admitting the will to probate, determines only the sufficiency of its execution. In respect to this question, the domicil of the testator is unimportant in this case.