Gamble *v.* Gamble.

[MONROE GENERAL TERM, March 2, 1863. *Johnson, J. C. Smith* and *Welles;* Justices.]

———————•••———————

JANE GAMBLE, *appellant, vs.* ROBERT GAMBLE, and others, executors &c., *respondents.*

A testator, being in the same room, with W. and K., took up his will, which was not yet signed, and turning to W. and K. and calling each of them by name, said: "That is my last will and testament." He then took a pen and wrote his name to it. W. then took the paper from the table and subscribed his name to it, and handed it to K. who signed his name to it. *Held* that the directions of the statute were complied with, notwithstanding the declaration was made *before* the testator had signed the will, instead of afterwards.

The attendance of W. had been procured by the testator for the purpose as well to be a witness to his will as to write it, and the attendance of K. had been procured for the sole purpose of his becoming a subscribing witness. They were in the same room with the testator, and sitting at the same table, at the time he subscribed the will. After he had signed it he

Gamble *v.* Gamble.

handed it to W., who subscribed it as a witness, in his presence, and handed it to K. who also signed the attestation clause; the testator telling the latter he must name the town and county he lived in. *Held* that there was a sufficient request to the witness; the testator's desire that they should subscribe the will as witnesses being unmistakably manifested, at the time, by his acts and declarations.

The apparent injustice of a testator to members of his family, although evidence to be taken into consideration in examining the question of the testator's soundness of mind, at the time of executing a will, is only a circumstance; and it seems, has never been regarded as sufficient, alone, to invalidate the will.

THIS was an appeal from an order of the county judge of Livingston county, acting as surrogate, admitting the will of David Gamble to probate. The will was executed in June, 1859, and the testator died September, 11, 1860. The will contained the following attestation clause, signed by the two subscribing witnesses: "The above instrument, consisting of one sheet, was now here subscribed by David Gamble, the testator, in the presence of each of us, and was at the same time declared by him to be his last will and testament, and we at his request sign our names ·thereto as witnesses." The appellant was the widow of the testator.

*Scott Lord,* for the appellant. I. There was no evidence, before the surrogate, that the witnesses to the will were requested to sign their names as such, in pursuance of the statute. If any such request was made, it was made several days before the will was written. The statute requires that the will shall be signed by the witnesses, at the request of the testator. (3 *R. S. 5th ed.* 144, § 35.) It appears affirmatively, from the evidence, that no request was made at the execution of the will, or after it was ready for execution, that any person should witness the same.

II. It appears affirmatively that the witness, Woodruff, was never requested by the testator to subscribe his name to the will, as a witness. The undisputed evidence upon this point is that the testator directed his son Robert to get Mr. Woodruff to draw the will, and to get Kelley as a witness.

Robert asked him "if Mr. Kelley was all the witness he wanted?" The testator replied, "no; but Mr. Woodruff can be one." (1.) From all this it may be inferred that the testator had Woodruff in his mind as a possible witness, and perhaps that he then intended to request him, when he came, to be a witness to his will. But this intention does not answer the requirement of the statute—that the witness shall sign his name at the end of the will, at the request of the testator. (2.) No authority was conferred upon Robert to request Woodruff to be a witness. (3.) It is very doubtful from the evidence, whether the witness said any thing to Woodruff about being a witness. He was not requested to do so. His statement that he told Woodruff that his father wanted him to write his will, and "also as witness" was not a very natural one. (4.) But however this may be, nothing can be clearer than that the unauthorized statement to Woodruff that he was wanted as a witness, is not a compliance with the statute; unless it be the proposition that the agent could not communicate such request upon the supposed intention of the testator; and that no authority to the agent to request Woodruff to sign as a witness was conferred, because he was directed to request him to draw the will. (5.) Nothing can be inferred from the attestation clause; for the reason that it appears affirmatively that it was not read to the witnesses, nor in the presence of the testator.

III. The proof before the surrogate established the fact that the testator declared the instrument to be his last will and testament *before* he had subscribed the same, or in any manner executed it; and that he made no such declaration after the will had been "so subscribed." This fact appears from the testimony of Kelley, the surviving witness, which is in no manner weakened by the legatee and executor, Robert Gamble. (1.) The statute is very clear and explicit, as to the mode of executing a will. 1st. It must be subscribed by the testator. 2d. Such subscription shall be made in the presence of, or acknowledged to, the witnesses. 3. The tes-

tator shall declare the instrument *so subscribed* to be his last will and testament. 4th. Two witnesses shall sign, &c. (2.) The will, until it is so subscribed, is no more than a blank paper; and the clear intention of the statute is that the will shall be perfected before the required declaration. (3.) The words "so subscribed" would be meaningless unless this construction is put upon them. If the legislature had intended that the will might be subscribed during the interview, these words would have been left out; but being in, they make the intention of the statute clear beyond all question. But if doubtful, the statute should be so interpreted as to give them some effect. (*Smith on Stat.* § 527. *Ward v. Whitney*, 4 *Seld.* 446.) Effect must be given to every part, if reasonably practicable. (*Westcott* v. *Thompson*, 18 *N. Y. Rep.* 366. *Chitty on Cont.* 70.) (4.) The mere order of events is not always material unless directed by statute, or rendered necessary in the nature of things. Both the statute and this necessity are combined in this case. 1st. The statute is imperative; and 2d. A person can no more declare an unexecuted will to be his last will and testament than he can acknowledge a deed which does not bear his signature. (5.) If the order of events at any one interview may be disregarded, then after the testator had signed the will, important additions might be made; or the witnesses might sign their names before the execution or declaration. But the words "at the end of the will" are no more significant than the words "so subscribed." (*Heyer* .v. *Burger*, 1 *Hoff. Ch. Rep.* 20.) (6.) As the statute makes a just provision for every man's estate, there is no necessity for a court to repeal any part of the statute for the purpose of sustaining a will. (*Lewis* v. *Lewis*, 1 *Kern.* 220, 226, 227.)

IV. The fact of insanity having been established, it devolved upon the executors to show that the will was executed during a lucid interval. (*Jackson* v. *Van Dusen*, 5 *John.* 141. *Mowry* v. *Silber*, 2 *Brad.* 133.)

V. At least the proofs before the surrogate established the fact that the testator, many years before the execution of the will, labored under a disease that weakened both his body and mind ; and while in that situation was unduly influenced by his sons, John and Robert, the residuary legatees and devisees. The evidence shows that the will was not read to the testator. (*Van Pelt* v. *Van Pelt*, 30 *Barb*. 134. *Clark* v. *Fisher*, 1 *Paige*, 171, 177. *Clarke* v. *Sawyer*; 2 *Barb. Ch*. 411. 2 *Comst*. 498. *Mowry* v. *Silber*, 2 *Brad*. 133.)

VI. The proofs also establish the fact that the testator was led to execute a will doing such great injustice to the appellant and her daughter, by the false statements of John and Robert. (*Bleecker* v. *Lynch*, 1 *Brad*. 459. *Van Pelt* v. *Van Pelt*, 30 *Barb*. 134. *Whelan* v. *Whelan*, 3 *Cowen*, 537. *Crispell* v. *Dubois*, 4 *Barb*. 393.)

*R. P. Wisner*, for the respondents. I. The appellant claims that there was no evidence before the surrogate that the witnesses to the will were requested by the testator to sign their names as such witnesses. The request to persons to become witnesses to a will may be made by signs, as well as words. Any act by the testator, denoting his wish, is a compliance with the statute. (23 *N. Y. Rep*. 9.) The testimony of Robert Gamble and Michael Kelley clearly shows the request of the testator to both of the subscribing witnesses, to be present on the occasion for that special purpose. The act of the testator at the time, in exhibiting the will to each of the persons and declaring it to be his last will, is sufficient.

II. The appellant further claims that the testator declared the instrument to be his last will and testament before he subscribed his name thereto. The proof shows that the testator, at the time of making the subscription, declared the instrument "to be his last will and testament." The statute does not require the declaration to be after the *name* is attached, if done at the same time, and before the business is

Gamble *v.* Gamble.

finally closed. (*See* 16 *Barb.* 141; 2 *id.* 200, 385, 394; 3 *Brad.* 78.) The testimony of Gamble would show that the declaration was after signing; while that of Kelley shows it was before. But both show that it was concurrent with the signing. It would be a forced construction of the third subdivision of the section of the statute referred to, to hold that the testator must go through with the mechanical operation of the pen before he announces the fact that his wishes, in regard to the disposition of his property after his death, are spread on paper. The signing is but the consummation of the act, and if done simultaneously with the declaration, it must be treated as a substantial compliance with the statute.

III. It is claimed by the appellant that there were no attesting witnesses to the will, who subscribed their names at the end thereof, as required by law. So far as the form of the will is concerned, as written out on paper, the witnesses both subscribed their names literally "at the end of the will." . The attestation clause is written immediately after the date of the will, and signed by the witnesses, with their places of residence. The statute was not intended to prescribe the precise position, or locality, which the names of the witnesses should occupy on the paper; but rather that the names should appear as witnesses to the whole will, and be subscribed there after the full completion of the will.

IV. Upon the question of undue influence, there was conflicting evidence. The surrogate who had the best opportunity of judging which class of evidence was nearest the truth has admitted the will to probate. The rule that questions of fact are not to be reviewed, unless under peculiar circumstances, applies to this case.

V. The allegation that the testator was of unsound mind and incapable of making a will, presents a question purely of fact. The court below must have had a better opportunity of judging of this, upon the whole evidence, than the appellate court can have.

*By the Court,* WELLES, J. It is objected on the part of the appellant, that the will of David Gamble was not executed according to the statute. The subscribing witnesses were Philip Woodruff and Michael Kelley. The former died after the will was executed, and before the death of the testator. Kelley was sworn and examined as a witness before the surrogate, and testified that he saw the testator sign the will. That he executed it in the presence of the witness. That the testator took up the will before he signed it and turned to Woodruff and called him by name, and then turned to the witness and called him by name and said, " That is my last will and testament." That the testator then took a pen and wrote his name to it. That Woodruff then took the paper from the table and subscribed his name to it, and handed it to the witness, who signed his name to it. That when the witness commenced writing his name, the testator told him he must name the town and county he lived in. The witness then wrote his name and place of residence, and gave the paper back to Woodruff. That at this time the two subscribing witnesses and the testator, David Gamble, were all in the room together. Robert Gamble, a son of the testator, testified that he was in the room when the will was executed. He says, " I was sitting about five feet from the table where father, Mr. Woodruff and Mr. Kelley were sitting. My father signed it and handed it to Mr. Woodruff, and he signed it and handed it to Mr. Kelley, who also signed it. My father held the will up to the men and said, ' This is my last will and testament;' and when he said this he handed it to Mr. Woodruff. Mr. Woodruff signed his name and handed it to · Mr. Kelley. Mr. Kelley wrote his name. Mr. Kelley said, ' I suppose this is all you want of me,' and Mr. Woodruff said ' Yes.' "

On cross-examination this witness testified that he could not say whether the testator declared the paper to be his last will and testament before or after he signed his name. That he did not watch to see whether the will was properly exe-.

cuted.　That his attention had not been called to the precise order in which the business was done until the day of his examination.　The foregoing is the substance of the evidence of what occurred on the occasion of the execution and publication of the will.　The will was drawn by Woodruff, one of the witnesses to its execution.　It appeared that before the will was drawn the testator had .designated Woodruff and Kelley as such witnesses.　He sent for Kelley on the occasion for that purpose, and when asked by the messenger, his son, whether Kelley was the only witness he wanted, he replied, no, but that Mr. Woodruff could be a witness.

The particular objections to the execution and publication of this will are, first, that it is not shown that the testator requested either of the subscribing witnesses to sign it as such witnesses; second, that the statute requires the testator, at the time of subscribing the will &c. to declare the instrument *so subscribed* to be his last will and testament; and that the evidence shows that such declaration was not made after the testator had subscribed the instrument; that the statute requires the instrument to be subscribed by the testator before he makes the declaration.　The language of the statute is as follows : " Every last will and testament of real or personal property, or both, shall be executed and attested in the . following manner : 1st. It shall be subscribed by the testator at the end of the will.　2d. Such subscription shall be made by the testator in the presence of each of the attesting witnesses, or shall be acknowledged by him to have been so made, to each of the attesting witnesses.　3d. The testator, at the time of making such subscription, or at the time of acknowledging the same, shall declare the instrument so subscribed to be his last will and testament.　4th. There shall be at least two attesting witnesses, each of whom shall sign his name as a witness at the end of the will, at the request of the testator."　(2 *R. S.* 63, *5th ed.* 144.)

The first two of these requirements appear to have been complied with.　The objections to the sufficiency of the proof

of the will arise under the 3d and 4th subdivisions. In regard to the third, namely, that the testator did not declare the instrument to be his last will and testament, after he had subscribed it, the exact question has been twice decided in this court; once in the third district, (*Doe* v. *Roe*, (2 *Barb.* 200,) and once in the 5th district, (*Keeney* v. *Whitmarsh*, 16 *id.* 141.) Both cases are exactly in point, and are authority with us, and are point blank against the appellant. In both cases the declaration was made before the wills were signed by the testator, and not afterwards, and it was held in each case that the 3d subdivision of the section cited was complied with. It was held in both cases, as it has been in many others which could be referred to, that the statute prescribing the manner of executing and attesting last wills and testaments, does not require a literal compliance with its provisions; but that a substantial observance of them will be regarded as sufficient. The case of *Coffin* v. *Ex'rs of Coffin*, (23 *N. Y. Rep.* 9,) is a strong illustration of this principle.

The remaining objection to the manner of proving the will in question, namely, that the evidence does not show that the witnesses were requested by the testator to sign the will as witnesses, cannot be maintained. In the case of *Coffin* v. *Ex'rs of Coffin*, (*supra*,) it was held that the testator's request to the witnesses to subscribe the attestation might be made through any words or acts which clearly evince that desire to them. Let us test this question in this case by that rule. The attendance of the witness Woodruff was procured by the testator for the purpose, as well to be a witness to his will, as to write it. The testator had procured the attendance of Kelley for the sole purpose of his becoming a subscribing witness. He knew they were both to be subscribing witnesses. They were in the same room with him, sitting at the same table, at the time he subscribed the will. After he had subscribed it he handed it to Woodruff, who subscribed it as a witness, in his presence, and handed it to Kelley, who signed the attestation clause. When the latter began to

Gamble *v*. Gamble.

write his name, the testator told him he must name the town and county he lived in, thus showing that he knew what Kelley was doing, and giving him directions as to the manner in which he should become a subscribing witness. For what purpose did he pass the paper to Woodruff, except that he might subscribe it as a witness, which was one of the objects for which he procured his attendance ? It seems to me that the evidence shows very clearly that the testator desired both Woodruff and Kelley to subscribe the will as witnesses, and that such desire was unmistakably manifested at the time by his acts and declarations ; and if that was so, it was a valid attestation.

The only remaining questions in the case are whether at the time of the execution of this will the testator was of sound and disposing mind and memory, and was free from any undue influence in the dispositions he thereby made of his estate. I have looked carefully through all the evidence, and am constrained to say that the evidence taken all together, in my opinion, comes short of establishing either of those propositions.

The mind is impressed with the apparent injustice to his wife and his daughter Elvira, towards whom, the evidence shows, he entertained ordinary feelings of natural affection. Such a circumstance is always evidence to be taken into consideration in examining the question of a testator's soundness of mind at the time of making a disposition of his property by will. But it is only a circumstance, and I believe has never been regarded as sufficient, alone, to invalidate a will. A man has the right by law to make whatever disposition of his property he chooses, however absurd or unjust.

Upon the whole I am of the opinion that the order or sentence of the surrogate should be affirmed with costs.

[MONROE GENERAL TERM, March 2, 1863. *Johnson, J. C. Smith* and *Welles,* Justices.]