# PRACTICE REPORTS.

## SUPREME COURT.

JOHN MORRIS and another agt. EDMUND J. PORTER and others.

*Will — execution and publication thereof — what proof sufficient — Devise — when void for illegal suspension of alienation.*

Where M., about to execute her will, sent for B. to be a witness thereto, who, when he came into the presence of M., the will lying on the table before her, was asked by P., who had written the will, to sign it as a witness to her will, such request being made in the hearing of M., B. then signed the will as a witness in the presence of M., who said, "thank you;" the witness B. testifying that he did not see M. sign the will, and could not say whether or not her signature was to the will when he signed it, the other witness, P., testifying that M. signed the will in the presence of all the witnesses:

*Held,* that the positive recollection of one witness will not be overcome by the non-recollection of the other, and that the certificate of a deceased witness that the testatrix "had signed, published and declared the instrument to be her last will and testament in the presence of the witnesses," should be received as evidence and have a controlling influence under the circumstances of this case; and that it thus appearing that the signature of M. was to the will when B. signed as a witness, the execution of the will was sufficiently proven.

The will contained a clause in these words "I do hereby give and bequeath the income, or incomes, arising from all my real estate to my children living at the time of my decease to have and to hold the same during the term of each of their natural lives; and at the decease of my said children I give and bequeath to my grandchildren all my said real estate, share and share alike, to have and to hold the same forever. And it is my will and desire that my said real estate is not to be sold during the lives of said children."

*Held,* that the devise was void for the reason that, thereby, the absolute power of alienation of the real property was suspended for a longer period than the continuance of two *lives* in being at the death of the testatrix.

*Special Term, May,* 1876.

THIS is an action for the construction of the will of Anne Morris, deceased, late of the county of Kings, and for the partition of her real estate in the event that the devise made thereof should be held void.

The testatrix made a will in the year 1867 in which she made an attempted disposition of the real estate in question; and afterward, and in the year 1871, she made another will by which she sought to revoke the will of 1867.

The surrogate of Kings county held that the will of 1871 was not properly executed and admitted the will of 1867 to probate. Evidence was given in this action by the parties as to the execution of the will of 1871 which, as it affected real estate, was here sought to be established. The facts appear by the opinion.

*Varnum, Turney & Harrison*, for plaintiffs.

*D. & T. McMahon and E. J. Porter*, for defendants Porter and others.

*A. B. Simonds*, for guardian *ad litem* for infant defendants.

*Wakeman & Latting*, for defendant Partridge.

*Huntley & Adams*, for defendant Vanderbilt.

VAN VORST, J. — The plaintiffs in their complaint insist that the paper subscribed by Anne Morris on the 13th day of June, 1871, as and for her last will and testament, was not duly executed by her and is not her will. That she did not sign the paper in the presence of the witnesses thereto, and did not acknowledge to them that the same was her last will and did not request them to witness the same.

On the other hand, the defendants Richard Morris and wife claim that the instrument was executed and published by the testatrix, as and for her last will and testament, in the presence of the witnesses in conformity with the statute.

There are three witnesses to the will, viz., Hannah M. Roope, Edmund J. Porter and Franklin Bradley. The testimony of one of the witnesses, Hannah M. Roope, was unavailable she having departed this life before the trial.

The will in question, according to the testimony of Edmund J. Porter, one of the witnesses, was written by him at the request and under the direction of the testatrix, and before its execution was read by him to her in the presence of Hannah M. Roope. Porter then told the testatrix that it was necessary to have witnesses. Testatrix replied that Hannah M. Roope would be one of the witnesses, and she requested Porter to be another. Testatrix then sent Hannah M. Roope out to summon Franklin Bradley to be another witness. Porter testifies that when Bradley came in Mrs. Morris stated to the witnesses that the paper was her last will and testament and asked them to become witnesses thereto. That she then signed her name and then Hannah M. Roope signed her name, then Porter and Bradley each also signed. Porter testifies that the testatrix was in the possession of all her faculties at the time.

Upon his cross-examination Porter testified that, according to the best of his recollection, Bradley came in before the will was signed by the testatrix.

The witness Bradley, when shown the will, testified that his signature thereto was genuine; that he was called from his business by Hannah M. Roope to witness *that* will; that there were present at the time the testatrix, Hannah M. Roope, John Morris and Mr. Porter. They were all sitting around the dining-room table. There were others present. That when he came in the room the testatrix said to him "good morning;" that he was then asked by Mr. Porter to sign that will; that he then took the pen and signed it. He saw that there were two other witnesses to it. Mrs. Morris, according to Bradley's testimony, did not say any thing about the will. The will was lying on the table as he came in. It was taken up and handed to him by Mr. Porter who

called his attention to it as the will of Mrs. Morris. All the parties were in the hearing of each other. Bradley says that Mrs. Morris saw him sign the paper, and after he had signed it she said to him "thank you." He did not *see her sign it; could not say whether her signature was there at the time or not.* Mr. Porter, who was sitting between Mrs. Morris and John Morris, handed the paper to him across the table and told him where to sign. When he came in the room Mr. Porter said, in substance: "We have sent for you to sign, as a witness, Mrs. Morris' will." Mrs. Morris heard the conversation. Bradley says: "Mrs. Morris was in the possession of her faculties; that she had always been noticed for the clearness of her faculties."

If the testimony of Porter had been corroborated in its essential facts by Bradley, no question could have arisen as to the proper execution of the will. But there is some want of agreement between these witnesses in an important particular. Porter testified that Mrs. Morris signed the will in the presence of each of the witnesses. Now, while there is not the least doubt but that Bradley, at the time he signed as a witness, understood and believed the paper to be her last will and testament, nor but that he signed the same as a witness at her request, such request being communicated to him by Mr. Porter in her presence and with her assent; yet Bradley testifies that Mrs. Morris did not subscribe the will in his presence, and he could not say whether her signature was there or not; *he did not see it.* There is no positive evidence of any distinct statement or acknowledgment on the part of Mrs. Morris, in the presence of all the witnesses, that she had subscribed the same. Execution and publication are distinct and independent acts. Mere publication, without any other act, is not a sufficient acknowledgment. Had it distinctly appeared by the evidence of Bradley that the will, when handed to him by Porter in the presence of Mrs. Morris, bore her signature accompanied by the request that he should be a witness to it as her will, that would,

Morris agt. Porter.

doubtless, have been an acknowledgment of the subscription of the will by her within the meaning of the statute (*Baskin* agt. *Baskin*, 36 *N. Y.*, 416; *Willis* agt. *Mott*, 36 *N. Y.*, 486). In *Newhorn* agt. *Goodwin* (17 *Barb.*, 236) it was held that the positive recollection of one of the witnesses will not be overcome by the non-recollection of the other. If Porter had simply sworn that the signature of Mrs. Morris had been already affixed when Bradley signed, it would have been, at most, a case of non-recollection. But Porter states on his direct-examination, that the testatrix signed in the presence of all the witnesses and before they signed. Bradley does not swear that the signature of the testatrix was not there when he signed; he could not say whether it was there or not. But the positive evidence of Porter, that the testatrix signed the will before the witnesses affixed their names, includes certainly an averment that the signature of Mrs. Morris was to the will when Bradley signed, and that under the case of *Baskin* agt. *Baskin* (*supra*) is sufficient (*See, also, valuable note to Pearson* agt. *Pearson*, 4 *English Reports*, 680, *in which the cases on the subject are collected by Mr. Moak*).

But I am inclined to give a controlling influence in this case, to remove any doubt upon the subject, to the certificate of Hannah M. Roope, the deceased witness, appended to the will. This witness had been residing with the testatrix, as a friend to take care of her, for a period of some fifty years. Her certificate is entitled to much weight, from her relation to the testatrix.

Her signature, as a witness to the will, is proved by both Bradley and Porter. Porter swears that he saw her sign her name, and that after the testatrix had signed. The certificate states that the instrument was " signed, published and declared by Anne Morris, the testatrix, to be her last will and testament, in presence of us, who have signed our names, at her request, as witnesses, in her presence, and in the presence of each other." This attestation, with the

other facts and circumstances, warrant a finding of the due execution of the will (*Orser* agt. *Orser*, 24 *N. Y.*, 51).

This conclusion is strengthened by the fact that Mr. Porter is a counsellor at law, and familiar with such subjects. He had drawn a will for the testatrix in 1867, which the will of 1871 was designed to displace. He had been charged with the preparation of the will, and to be present at its execution, and by the further fact that the testatrix was confessedly in the enjoyment of all her mental faculties, and knew that the paper signed by her and the witnesses was signed and published by her as her last will and testament.

The plaintiffs make the further objection that the alleged will, even if properly executed by Anne Morris, makes no valid disposition of her real estate, and as to the same is wholly void and of no effect, for the reason that thereby the alienation of the real estate, devised thereby, would be suspended for a longer period than the duration of two lives, in being at the time of the death of the testatrix, to wit, during the lives of four children. The clause of the will, from which the result above suggested is claimed to follow, is in these words : "I do hereby give and bequeath the income, or incomes, arising from all my real estate, to my children living at the time of my decease, to have and to hold the same during the term of each of their natural lives, and at the decease of my said children, I give and bequeath to my grandchildren all my said real estate, share and share alike, to have and to hold the same forever. And it is my will and desire that my said real estate is not to be sold during the lives of said children, and they are to receive the income quarterly, *from my executors*, hereinafter named, provided, nevertheless, the same is collected in such manner."

The testatrix left her surviving four children and several grandchildren.

In order to determine whether the devise in question is open to the objection, that the absolute power of alienation is suspended by a limitation or condition for a longer period

Morris agt. Porter.

than during the continuance of two lives in being at the creation of the estate, the language of the will is to be carefully considered so as to determine its effect and ascertain the intention of the testatrix, which must control. Such construction, however, should be adopted, if fairly to be gathered from the terms of the will, as will uphold, rather than adjudge it void, as favoring a perpetuity condemned by the statute.

First, then, it is clear that the income arising from all the real estate of the testatrix is given to her four children living at the time of her death, to be had and held by them during the term of each of their natural lives. This is a complete devotion of all the income of all the real estate to these four children, to the end of the life of the survivor of them.

The income of the whole real estate thus being given to the four children of the testatrix during the lives of each and all of them, it is quite clear that it was the intention of the testatrix by such disposition, that the same should not be alienated or disposed of at any time while such children lived.

In fact, the will of the testatrix in express terms is: That her real estate should not be "sold during the lives of said children." At the decease of her children, which must mean all her children, as each of them is to share in the income, which would of necessity include the last survivor, the real estate is devised to her grandchildren, share and share alike, to have and hold the same forever. If the real estate was inalienable before the death of the last survivor of the four children, at which event the devise to the grandchildren takes full effect, then the will creates a suspension for a period longer than the continuation of two lives, and the devise is void (*Revised Statutes, section* 15, *art.* 1, *tit.* 2, *and chapter* 1, *part* 2; *New York Statutes at Large* [*Edmonds*], *vol.* 1, *page* 672, *section* 15; *also section* 14; *Colton* agt. *Fox*, 6 *Hun*, 49; *Coster* agt. *Lorillard*, *supra*, *page* 265).

The power of alienation by the fourteenth section of the

Revised Statutes, above referred to, is suspended "when there are no persons in being by whom an absolute fee in possession can be conveyed." At most, the four children of the testatrix could convey only an interest in the lands for their lives. But such conveyance would be in opposition to the express terms of the will, which creates their interest. This, therefore, they could not do. But it may be doubted whether they have an interest in the land, other than in the income arising therefrom. The will of 1867 in terms gave *the land*, as well as the income thereof, to the children for their lives, and devolved no duty upon the executors.

The will under consideration provides that the children are to receive the income quarterly from the executors. As executors, as such, have no power to collect accruing rents of the real estate, there may be an implied power in them to receive the rent in trust to pay over during the lives of the four children. They could not pay over, unless they were authorized to and did receive the income ( *Vail* agt. *Vail*, 4 *Paige*, 328). If there be such trust in the executors, it is quite clear that they could not convey during the lives of the four children. It is not necessary, however, to decide that, for in no event could an absolute conveyance in fee of the premises be made, unless the grandchildren, the devisees of same, joined therein. But the grandchildren cannot make an effective conveyance, for the reason that it cannot be ascertained until the death of the surviving child of the testatrix, who will eventually take the estate.

The rule is, that a devise to a class of persons takes effect in favor of those who constitute the class at the death of the testator, unless a contrary intention can be inferred from such extrinsic facts as may be entitled to be considered in construing the will ( *Campbell* agt. *Raudon*, 18 *N. Y.*, 412).

In *Collin* agt. *Collin* (1 *Barb. Ch.*, 631), it is held that where an estate is to be distributed among a class at the death of a particular person, or upon a contingency which may happen at any time subsequent to the death of the testator, all

who answer the description of the class, at the time appointed for distribution, will be entitled to a share in the fund.

When the language of the will indicates a present bequest of a fund, which is to be distributed at a period subsequent to the death of the testator, those who are *in esse* at the time of the death will take a vested interest, but subject to open and let in others who may come into being, so as to answer the description, and belong to the class at the time appointed (*Kilpatrick* agt. *Johnson*, 15 *N. Y.*, 322; *Tucker* agt. *Bishop*, 16 *N. Y.*, 402; *Johnson* agt. *Valentine*, 4 *Sandf.*, 36). There is nothing in the will which would exclude grandchildren, born after the death of the testatrix, from participating in the devise of the real estate. Interested in the fee, such subsequently born grandchildren must needs unite in a conveyance to make an absolute and perfect title, from which it follows, that the power of alienation is suspended by the devise beyond the time limited by the statute, and the same is void.

But it is urged, on the behalf of the defendants who uphold the will, that section 17 of article 1, title 2, part 2, chapter 1 of the Revised Statutes, applies to this will, and that, after the death of the second life tenant, being one of the successive estates for life, upon which the remainder is limited, the remainder to the grandchildren will take effect in the same manner as if no other life estate had been created.

The object of this statute was to carry out, by the doctrine of *cy-pres*, the intentions of the testator, as far as possible, upon the presumption that the successive estates were given in the order of preference.

But in this case it is clear that the testatrix intended no such preference, and that, on the contrary, her whole intention would be defeated, if two of her children should thus lose their life estates; and there is no equity in attempting to apply the doctrine of *cy-pres* here, nor can the court decide that the life estates of the last two survivors should be eliminated. The gift was to a class, without preference or distinction, and this being clearly the intention, and an

essential part of the general scheme of the will, the whole devise must fail (*Knox* agt. *Jones,* 47 *N. Y.,* 398, *opinion of* ALLEN, *J.; Coster* agt. *Lorillard, supra; Manice* agt. *Manice,* 43 *N. Y.,* 303).

The objections above mentioned, to the will of 1871, that, by force of the devise therein contained, the absolute power of alienation of the real estate of the testatrix is suspended for a longer period than is prescribed in the statutes, applies with equal force to the will of 1867.

The conclusions which I have reached are, that said wills make no valid disposition of the real estate in question, and that the same, upon the death of Anne Morris, descended to her heirs at law, unaffected by the devises thereof attempted to be made thereby; and that there be a partition and division of said premises among the parties to this action, according to their respective rights and interests therein, as above announced, and if a partition thereof cannot be made without material injury to the rights of the parties, then that the premises may be sold, under the direction of this court, and that the proceeds of sale may be divided among the parties, according to their respective rights and interests, as above expressed.

The findings of fact, and conclusions of law, to be prepared by the plaintiffs' attorneys, and served upon the defendants' attorneys, will be settled and signed upon due notice, when the costs and allowances will be adjusted and allowed.