MONROE COUNTY.—HON. J. A. ADLINGTON, SURRO-GATE.—October, 1884.

GARDINER v. RAINES.

*In the matter of the probate of the will of* CHARLES A. GARDINER, *deceased.*

The intent of the legislature, in requiring, by 2 R. S., 63, § 40, subd. 2, a testator's subscription to his will to be "made in the presence of each of the attesting witnesses," or, etc., was not simply that the testator and witnesses should be within the same enclosure, but that the latter should either actually see the former write his name, or have their attention directed to the act of signing while the same is taking place.

The rule that a will may be subscribed by the testator in the presence of one witness, and the signature be thereafter acknowledged to the other—applied.

Evidence for and against the proposition that testator acknowledged his subscription to one of the subscribing witnesses—weighed, and the authorities relating to the subject of such an acknowledgment—collated and discussed.

PETITION for the probate of decedent's will, presented by William G. Raines, one of the executors therein named; opposed by Celeste M. Gardiner, a sister of decedent. The facts are stated in the opinion.

GEO. RAINES, *and* D. B. HILL, *for proponent.*

WM. F. COGSWELL, *for contestant.*

THE SURROGATE.—Charles A. Gardiner, the testator above named, died April 29th, 1884, at his residence in the town of Gates, Monroe county, N. Y., leaving the paper presented for probate, purporting to be his last will and testament, by which he makes distribution of his entire estate, with the exception of a trifling legacy, in a manner entirely different from that which would have been made under the statutes of this State, had he died intestate. The instrument bears the date of March 18th, 1884, and it appears to be signed by the testator at the end. The signatures of the attesting witnesses, Hannan and Hempsted, appear first at the left of the testator's and one line below, and then follows a regular attestation clause, to which their names are also affixed.

The execution of the instrument took place at the rooms of the "Ancient and Accepted Scottish Rite," a Masonic body, in the city of Rochester, N. Y. By previous appointment, the testator met Mr. William G. Raines, the draftsman of the will, and a legatee thereunder, at this place, on the evening of the day aforesaid, for the purpose of transacting this particular business; and, shortly after their arrival, Mr. Gardiner requested Mr. John W. Hannan and Mr. John Q. A. Hempsted to step into the room, stating to each that he wanted him to witness his will.

The "Throne Room," so called, was the one in which the signatures of the testator and the witnesses were affixed to the will. It was an apartment about twelve feet wide and fifteen feet long, and the desk at which the writing was done was situated at the side of the room most remote from the door. Adjoining

the "Throne Room," was another known as the "Robing Room," into which retired for a brief time the persons engaged about this transaction, on account of the entrance into the "Throne Room" of several people whom the testator apparently did not wish to know what business his party were engaged in. While in the "Robing Room," a number of questions were put to the testator and answered by him in relation to the matter of the will, to which reference will hereafter be made. The "Throne Room" having been now vacated, the party then returned thither, and the witnesses signed their names under the attestation clause. The sister of the testator, his only heir at law and next of kin, opposes the probate of the will on the ground that it was not subscribed, published and attested, in conformity with the statute regulating the execution of last wills and testaments.

The statute is as follows : "Every last will and testament of real and personal property shall be executed and attested in the following manner :

1. It shall be subscribed by the testator at the end of the will ;

2. Such subscription shall be made by the testator, in the presence of each of the attesting witnesses, or shall be acknowledged by him to have been so made, to each of the attesting witnesses ;

3. The testator, at the time of making such subscription, or at the time of acknowledging the same, shall declare the instrument so subscribed to be his last will and testament ;

4. There shall be at least two attesting witnesses, each of whom shall sign his name as a witness, at the

end of the will, at the request of the testator" (R. S., part 2, ch. 6, tit. 1, art. 3, § 40).

The evidence shows a complete compliance with the requirements of the first, third and fourth of the foregoing subdivisions, and the only question to be decided is—whether or not the alleged will was signed by the testator in the presence of each of the attesting witnesses, or the signing thereof was acknowledged by him to each of said witnesses. Mr. Hannan, one of the attesting witnesses, was present and saw Mr. Gardiner affix his signature at the end of the will. Mr. Hempsted was also in the same room, but, as I believe from the evidence, was standing at the door of the room, with his back toward the desk at which the signing was done, in conversation with some other persons, who had knocked for admission at the precise moment when the testator signed the will, and did not see the signature made, nor know that the signing was taking place. The latter fact he asserts positively, and the other witnesses, though certain that he was within the same enclosed space, are not able to say that Hempsted saw the signature affixed, or had his attention directed to the fact that the signing was taking place at the time.

There is abundant authority for sustaining the probate of a will, notwithstanding the denial, by one or both of the subscribing witnesses, of the observance of the proper legal forms, in cases where there is a regular attestation clause, and the surrounding circumstances tend to show the due execution of the will (Trustees of Theological Seminary v. Calhoun, 25

*N. Y.*, 422; Kinne v. Kinne, 2 *T. & C.*, 391; Matter of Cottrell, 95 *N. Y.*, 329).

I see no reason, however, to doubt the testimony of Mr. Hempsted, that he did not see the execution of the will by the testator, and did not know whether it had been signed when he first affixed his name to the instrument above the attestation clause; and I have adopted the foregoing version of that part of the transaction as most consistent with all the evidence in the case; for, although there are some circumstances which would warrant the belief that he actually saw the signature affixed, yet they do not overcome his positive testimony to the contrary. The decisions are not numerous upon the precise point of what constitutes *signing in the presence of the attesting witnesses,* within the language of the statute, but it seems to me that the intention of the legislature was, not simply that the witnesses and the testator should be within the same enclosure, but that the witnesses should either actually see the testator write his name, or should have their attention directed to the act of signing while the same is taking place.

In the case of Peck v. Cary (27 *N. Y.*, 9), EMOTT, J. says: " signing such a paper (*i. e.* a will) in the same room with the witness, who does not see the act, and who does not know at the time that any such act is taking place, is not a signing in his presence." In Burke v. Nolan (1 *Dem.*, 436), the Surrogate discussing the question of publication of a will, says: " It may well be that if the witness was in such a position that he *could and ought* to have heard what was said,

the remarks should be considered as having been made within his hearing, on the same principle that, if he was in a position to see the testator sign the will, it must be deemed to have been signed in his presence."

In Spaulding v. Gibbons (5 *Redf.*, 316), it is said that "if the witness was in the same room with the testator, or in the adjoining room, in such a position that he could see him sign, after his attention had been drawn to what was going on, the signing will be considered to have taken place in his presence."

In the case of Jauncey v. Thorne (2 *Barb. Ch.*, 40–70), the Chancellor says: "The attesting witnesses should see the testator, or some one for him, sign the instrument which they are called upon to witness, or the testator should either say or do something in their presence and hearing, indicating that he intends to recognize such instrument as one which has been signed by him, as a valid will."

In Mitchell v. Mitchell (16 *Hun*, 97), the court says: "There are four separate clauses in the statute, each of which has its own distinct object . . . . . The second clause is, that the subscription of the testator shall be made in the presence of each of the attesting witnesses. The principal object of this is, that the witnesses may be able to say from positive knowledge that the subscription was made by the testator." I think that, within the rule laid down by the above authorities, the signing of this will, by the testator, was not done in the presence of Hempsted; and that the said will, therefore, was not executed in his presence, within the meaning of the first clause of the above quoted second subdivision of the statute.

A will, however, may be signed in the presence of one witness, and the signature thereafter acknowledged to the other attesting witness (Matter of Tonnele, 5 *N. Y. Leg. Obs.*, 254; Hoysradt v. Kingman, 22 *N. Y.*, 372).

This, I think, was done in the case under consideration, and that the execution of the will is sufficiently proved.   Mr. Hempsted states that the question was asked Mr. Gardiner in the Robing Room—whether he had signed this paper as his last will and testament, and that he replied : " Yes ; certainly."   Mr. Hannan testifies that while the four persons, who were engaged in and about the execution and attestation of this will, were in the Robing Room, Mr. Raines read over the attestation clause in the presence and hearing of them all, and that questions were there asked by Mr. Raines and answered by Mr. Gardiner, one of them being : " Is this your last will and testament ? " and that the testator said it was.   Mr. Raines then said, in the presence and hearing of both witnesses and the testator : " Now, gentlemen, step back and sign."   Mr. Hannan further states that there were questions put that he does not now remember.   Mr. Raines testifies that, while holding the will in front of Gardiner, after they, with the two attesting witnesses, had passed into the Robing Room and were standing near together, he asked this question : " Charlie, do you wish these two gentlemen to understand you have signed this as your last will and testament ? " and that Gardiner answered : " Yes ; " that the question was then asked : " Do you wish them to sign as subscribing witnesses to your last will and

testament?" and that Gardiner answered: "I do." Mr. Hempsted at another point in his evidence says that Raines asked Gardiner: "Is this your last will and testament?" to which Gardiner answered: "Yes;" and that the further question was asked— if he (Gardiner) accepted Hannan and himself (Hempsted) as witnesses to his last will and testament; and that Gardiner said: "Yes, certainly." He also stated that there may have been one or two more questions put that he does not recollect. It is entirely clear from the evidence in the case, to which reference has been briefly made, that the testator's signature was duly acknowledged by him, to both of the attesting witnesses, after it had been affixed to the will.

Even if the testimony of Hempsted, that Mr. Gardiner was asked, in the Robing Room, whether he had signed the paper as his last will and testament, and that he replied: "Yes, certainly," were rejected, on account of the subsequent attempt to deny or qualify it, and the same course were pursued with the statement of Mr. Raines, that he said to the testator: "Charlie, do you wish these two gentlemen to understand that you have signed this as your last will and testament?" and that Gardiner answered: "Yes"— on the ground that Raines is an interested witness, still enough unimpeachable evidence remains to require the admission of this will to probate.

The authorities are numerous and decisive, to the effect that a much less formal observance of the different requirements of the statute is sufficient to sustain the probate of a will.

In 1 Williams on Executors (6th Am. ed., 117, 118),

it is stated that " the result of the cases appears to be that, where the testator produces the will, with his signature visibly apparent on the face of it, to the witnesses and requests them to subscribe it, this is a sufficient acknowledgment of his signature." In Morris v. Porter (52 *How. Pr.*, 1) the court says: " Had it distinctly appeared that the will, when handed to the witnesses to be attested, bore the signature of the testatrix, accompanied by the request that they should be witnesses to it as her will, that would, doubtless, have been an acknowledgment of the subscription by her, within the meaning of the statute." In Kinne v. Kinne (2 *T. & C.*, 391), it is declared not to be necessary to a due acknowledgment of the signature, that it should be referred to in words. An acknowledgment that the instrument purporting to be a will, and purporting to be signed by the testator, is his will, is a sufficient acknowledgment of the signature." In Baskin v. Baskin (36 *N. Y.*, 418), the court says that " when the testator produces a paper bearing his personal signature, requests the witnesses to attest it, and declares it to be his last will and testament, he thereby acknowledges the subscription, within the meaning of the statute.

In Peck v. Cary (27 *N. Y.*, 9–39), the court cites, with apparent approval, many cases in which certain acts and declarations, for the most part extremely informal, were held to be sufficient acknowledgments of the subscriptions of wills; and among them is the case of Mary Warden (2 *Curteis*, 334), in which the testatrix had signed the will before the witnesses came into the room ; they were sent for by her, and

after their arrival the draftsman of the will produced it, and told the testatrix that the witnesses had come, to which she replied: "I am very glad of it; thank God." The witnesses thereupon signed their names in her presence. It was held that the signature was sufficiently acknowledged.

In re Harder (1 *Tuck.*, 426), it was held by the Surrogate that "the words: 'Will you witness my will?' or 'I want you to witness my will,' addressed by the decedent to, and heard by both subscribing witnesses, constitute a sufficient acknowledgment."

It is not essential that the signature should be actually shown to the witness at the time the acknowledgment is made. In Willis v. Mott (36 *N. Y.*, 486), it was held that "the statute does not require that the testator shall exhibit. his subscription to the will, at the time he makes his acknowledgment," and that "it would, therefore, follow that when the subscription is acknowledged to an attesting witness it is not essential that the signature be exhibited to the witness." In Hoysradt v. Kingman (22 *N. Y.*, 372), it is stated that "an acknowledgment by the testator of his signature and execution of the will is equivalent to the actual seeing by the witnesses of the physical act of subscription." See, also, Taylor v. Brodhead (5 *Redf.*, 624); Matter of Gilman's will (38 *Barb.*, 364–369); Gamble v. Gamble (39 *Barb.*, 373).

While a failure to comply with either of the statutory requirements, in the execution of a will, is fatal (Chaffee v. Bapt. Miss. Conv., 10 *Paige*, 85; Lewis v. Lewis, 11 *N. Y.*, 220; Remsen v. Brinckerhoff, 26

. *Wend.*, 325), yet the ·courts in the above cited cases, and in many others of similar tenor, have authoritatively declared what is a sufficient compliance with those requirements; and within these cases, I am constrained to hold that the will of Mr. Gardiner was properly executed, with all the formalities required by law, by a competent testator, and must therefore, be admitted to probate.