Birchard, C. J.
This case was submitted to the Court below upon the proofs offered by the plaintiff. Exception was taken to the sufficiency of the testimony offered in support of the action. The Court found it sufficient, and no motion for a new trial was presented. By treating the exception as a demurrer to the evidence, and in no other way, can the questions argued upon the assignment of error be considered. Viewed in this light, the proof offered below should be considered as establishing every fact which may reasonably be inferred from the evidence, without drawing therefrom forced or violent inferences. Trying the evidence by this rule, did it establish the cause set forth in the declaration ?
The consideration of the promise declared upon is alleged to have been forbearance to sue Henry Reed, Jr. for three years from the fourth of June, 1838.
The evidence to support this averment consisted of the writ *132 ten promise, of proof that no claim of payment from Henry Reed, Jr. was made within the three years ; that plaintiff below forbore to prosecute for three years, and that after the expiration of that time, the defendant below offered to pay the claim in Ohio State Bonds. That again, in 1842, he proposed paying the same in property, 'or excused himself when called on, by alleging inability for want of means, but at no time denied his liability to pay the same.
Now it may be said that this all does not prove directly that the consideration alleged actually existed, yet one could scarce doubt from these facts that a good consideration did exist; and the presumption is that it is the one set forth in the declaration. It is unreasonable to presume that the written engagement was entered into without cause. The Judges of the Court of Common Pleas had the facts so before them that they were justified in drawing all reasonable and fair inferences that could be well based upon this evidence. They might well presume, from the circumstances, that the delay granted to the maker would not have occurred without cause. That the promises to pay in State Bonds or other property, as well as the excuses for non payment, would not have been made without a binding promise. The circumstances, viewed in a favorable light, certainly looked towards the support of a consideration for the written guaranty; and to no other than the identical one set forth in the declaration. We are not prepared, therefore, to say that the Court erred in this respect.
But it is further urged that no evidence was admissible to prove any consideration, none being expressed in the written guaranty.
This objection presents a vexed question, arising out of the act for the prevention of frauds and perjuries. It is believed that in this State it has been hitherto uniformly held, that a promise, in writing, to pay the debt of another, if founded upon a good consideration, would sustain an action, and that such a consideration might be proved by parol, and need not be set forth or incorporated in the writing itself. Upon this question *133 different Courts have held different opinions. It was to me a matter of some surprise to find that the law of this State, upon this point, was considered unsettled. This casé was into Bank, in order that a reported case, in accordance with what was supposed to have been the uniform current of decision in this State, might be placed within the reach of every one, and not because the point was regarded doubtful.
Our statute is similar, so far as it bears upon this question, to the English Statute of 29th Charles 2d, c. 3, § 4. In 1804, in the case of Wain v. Walters, that statute, for the first-time; received a construction, requiring a recital, in writing, of the consideration on which a promise to pay the debt of another is founded. The doctrine seems to have taken the profession in England by surprise. It has been repeatedly questioned in England, but has hitherto been sustained there. 14 Ves. p. 189; 15 Ves. p. 286.
In 1808, the principle held in Wain v. Walters was adopted in New York, and these decisions have been perhaps the means of giving a more extended currency to the doctrine of that case in some of our sister States, and possibly may have contributed to its stability in the country of its origin. But in 1809 in the case of Hunt v. Adams, 5 Mass. Rep. 360, the doctrine of Wain v. Walters was departed from, by the Supreme Court of Massachusetts, and, as we think, very good reasons were given for the departure by the learned Chief Justice Parsons. He held the English case to be one of first impression, but admitted that if the word agreement, as used in the statute, is to be taken not in a popular, but in a strictly legal sense, it might be unreasonable to question that decision. He held, however, that the word agreement, as originally incorporated into the statute, was used in the popular sense, as intending the undertaking of the party charged, and not necessarily including the consideration •for it. This view of the statute was re-affirmed by the same Court in 1821, in a learned and able opinion by Parker, C. J. in Packard v. Richardson et al., 17 Mass. Rep. 137, in which he reviewed at length all the cases then decided upon this subject. *134 His concluding remarks are worth copying.’ “We are not (says ^ge) overruling a settled principle, or introducing a new in.refusing to yield to this doctrine; but are merely vindicating what we believe to be the true and established construction, from the doubts brought upon it by the Courts of King’s Bench.”
Well might he call it the vindication of an established construction, for from the reign of Charles II, to the year 1804, it had always been understood, both in England and the United States, that it was not necessary that the consideration should appear on the face of the writing. So said Lord Eldon, and so said Lord Ellenborough. The question was, what did the statute mean, or rather what did the men who framed the act, and Parliament mean in King Charles’ time, when they enacted the law ? Those best able to answer were its cotemporaries — the Legislators and Judges who lived at the time of the enactment, and within the first century afterwards. Their construction, in the language of the Massashusetts Court, “ became established law,” for whatever was the meaning of the statute when first enacted, should be its meaning through all future time. It is ‘the very essence of a law, that it be uniform and unchangable.
Again, it is said there should have been a demand and notice of non-payment. To this, we reply, that the engagement was an original undertaking to pay the amount of the note in three years. It was not an engagement that the pnaker should pay the note when due, and if not, that the guarantor would pay it, but that in consideration that the payee would delay the payment until two. years after the maturity of the note, the guarantor would pay it. No demand, under this contract, was required of the maker, at the maturity of the note; it was not contemplated by the parties. On the contrary, the consideration of the promise not only excused the making of such demand, but made one improper. The promise was made because the payee had agreed to delay payment when the note fell due, and not then demand it.

Judgment affirmed,'