In the matter of proving the last will &c. of NATHANIEL
GILMAN, deceased.

A testator, and three other persons, M., H. and C., being together in the same
room, the testator asked M. if he would witness his will, and if H. and C.
would do so, also.  M. answering that H. and C. had said they would, the
testator produced and signed a paper, and declared it to be his will.  M.
then signed the attestation clause; after which, at the request of the testa-
tor, and in his hearing, he asked H. and C. to witness the will, in these
words : "Mr. G. [the testator] requests you to witness his will;" the testator
making no objection.  The will was then signed by H. and C. as witnesses.
*Held* that the will was well executed.

An instrument is signed at the *end* thereof when nothing intervenes between
the instrument and the subscription.  Accordingly *held* that a codicil was
signed by the subscribing witnesses at the end thereof, although there was
a blank space of four inches between the signature of the testator and the
commencement of the attestation clause.

The decree of a surrogate, admitting a will to probate, determines only the
sufficiency of its execution.  In respect to that question, the *domicil* of the
testator is unimportant.

APPEALS by Winthrop W. Gilman and Anna K. Gilman
from a decree of the surrogate of the city and county
of New York, admitting to probate the will of Nathaniel
Gilman, deceased, and the codicil thereto.

Nathaniel Gilman, the decedent, died December 19th,
1859.  The paper admitted to probate as his will bears date
April 10th, 1858, and was alleged to have been executed at the
city of New York, in the presence of William Miles, Samuel
Hurley and Alexander C. Collins, as attesting witnesses.
The paper admitted to probate as a codicil to the will bears
date the day of the decedent's death.  Both the will and the
codicil were drawn by Isaac Redington, one of the executors
named in the will, and he was present at the execution of
both of them.  The attestation clause following the will, and
that following the codicil, are both in the same words, viz :
" Signed, sealed, published and declared by said Nathaniel
Gilman to be his last will and testament, to which we have,
by his request, and in his presence, and in the presence of
each other, set our names, the day and year aforesaid."  It

In the matter &c. of Nathaniel Gilman.

was claimed that they were both imperfect in that they do not state that the subscription of the testator was made in the presence of the witnesses or acknowledged by him to them.

On behalf of the appellant it was claimed that the proofs showed the following facts as to the execution of the paper propounded as a will. The witnesses Miles, Hurley and Collins had all been acquainted with the decedent for many years. A day or two previous to the execution of the will, Miles testifies that the decedent sent to him to inquire if he would be at leisure on a day appointed, and whether Collins, Hurley and another person would unite with him as witnesses. Miles says that he arranged with Hurley and Collins that they should be present, and sent word to the decedent to that effect. On the day when the will was signed the decedent came to the place of business of Hurley and Miles in Gold street, accompanied by Mr. Redington. The offices occupied by Hurley and Miles consisted of two rooms, which were separated from each other by a brick partition or pier about four feet in width. In the first room entered from the street stood a writing table about seven feet long and three and a half wide. Directly opposite to that table was the pier or partition separating the two rooms. Beyond and opposite this, and in the back office, was a business desk, about ten feet in length, the ends of which extended beyond the pier on either side. A person standing at the desk, on the side nearest the table, would be from thirteen to fifteen feet distant from persons occupying the positions of Miles and Gilman at the table. The table could not be seen from the center of the desk, but could from either end. It did not appear that a person standing at the center of the desk, could see the table without stepping towards the opening at the side of the partition wall. When Mr. Gilman entered the office, he, Mr. Redington, and Mr. Miles seated themselves at the table. Hurley was standing at the desk on the side towards the partition with his back towards Gilman;

and Collins was at the other side of the desk and opposite to Hurley. While at the table, and before signing the will, the decedent asked Miles if he would witness the will, and if Hurley and Collins would do so also. Miles answered that he had spoken to them about it, and they said they would. Gilman then signed the paper and declared it to be his will. Miles then signed the attestation clause. Up to this time Hurley and Collins had remained in their respective positions at the desk, and neither of them had seen or heard any thing that had passed. At this time, according to the testimony of Hurley, Miles called Hurley by name. Hurley left the desk and went to the table. When he got to the table Miles said to him, " Mr. Gilman requests you to witness his will." Miles handed him the will, and Hurley, standing at the end of the table, signed his name to the attestation clause. Then Miles called Collins by name. Collins left the desk, and when he reached the table Miles said to him, also, " Mr. Gilman requests you to witness his will." Hurley, still standing at the end of the table, held the will open and Collins signed the attestation clause. As soon as this was done, Hurley and Collins returned to the desk. As they left the table, the decedent nodded his head in the usual manner of persons taking leave of each other. Hurley swears positively that he did not hear the decedent speak during the whole of the transactions in the office, except to ask for Mr. Miles when he first came in, and perhaps to say "good morning," at the same time. Nor did he see him make any sign or gesture except the nod already mentioned. Collins remembers but little of the transaction. Miles thinks that, after Hurley and Collins were called in, the decedent stated that he had made his will, and acknowledged the instrument to be his last will and testament, and asked Hurley and Collins to subscribe as witnesses. But he states this with many qualifications, and confesses that the facts have not always been fresh in his recollection, and that he has been obliged to make an effort to recall them. In

---

In the matter &c. of Nathaniel Gilman.

---

other respects, his testimony corroborates that of Hurley.
Mr. Redington was present before the surrogate, but was not
examined.

The objection to the codicil was that it was not attested
in compliance with the provisions of the statute of this state,
regulating the execution of wills. The codicil was written
on foolscap paper, fastened together in book form by a silk
ribbon, passed through the center of the paper. The writing
commences at the top of the right hand side of the book,
when it is opened, at its center, and is continued to nearly
the bottom of the page. The other side of the page thus
written on is left blank, and the writing continued on the
following right hand page, and ends four lines above the
bottom of the page, where the testator signed the codicil.
The three lines on the page below the signature of the
testator are left blank, and also the page next succeeding,
and seven lines of the third page. On the hearing before
the surrogate certain of the heirs objected to the proof of the
will, for the reason that the testator was not an inhabitant
of this state, and did not die in this state, but was an inhab-
itant of the state of Maine, and died at Waterville, in the
latter state, and that the will was taken from that state and
brought here for probate, without the consent of the execu-
trix, and the widow. And also for the further reason, that
proceedings had been taken in the state of Maine before any
proceedings were had before the surrogate of the city and
county of New York, before a court having competent juris-
diction in the state of Maine, and letters testamentary
granted. And they offered to show that the testator was a
non-resident and a non-inhabitant of the state of New York,
and was a resident and inhabitant of Waterville, in the
state of Maine, at the time of his decease ; and also that let-
ters of administration had been granted on the estate before
these proceedings were taken, and claimed the right to show
it before any proceedings were taken. On objection this offer
was refused, and exception taken.

*C. H. Glover,* for the appellant Winthrop W. Gilman.

*Wm. Tracy* and *Wm. Curtis Noyes,* for the appellant Anna K. Gilman.

*Wm. Fullerton,* for the executors &c.

*A. W. Bradford,* for the minor respondents.

*By the Court,* LEONARD, J. 1. The will in question was well executed. The testator and the witnesses were all in the same room at the moment the attestation was signed. The witnesses all signed substantially in the presence of each other, as well as in the actual presence of the testator, within the meaning of the statute. So far as the witness Miles is concerned the will was actually signed in his presence. Miles, at the request of the testator and in his hearing, requested the two other witnesses, Hurley and Collins, then present in the same room, to witness the will, in these words : "Mr. Gilman requests you to witness his will." The instrument was then produced, already signed by the testator, and in his presence signed by Hurley and Collins, as witnesses. The testator had previously requested Miles to have these persons present to witness the execution of his will, and to be present himself. The testator understood the business which was then being transacted. He made no objection to the declaration or request made by Miles in his presence and hearing, but proceeded to consummate the business for which he came there, the execution and attestation of his will. The intent to execute his last will was thereby published and declared, and was also acknowledged by the testator, and the witnesses were by him requested to become attesting witnesses.

2. The codicil is also well executed. An instrument is signed at the end when nothing intervenes between the instrument and the subscription. Who shall undertake judicially to say that the subscription shall be one-eighth of an

inch, half an inch, two inches or ten inches from the last line of the instrument? The distance from the last line has not been fixed by statute. The place named in the statute is the end. The end of an instrument, in writing, commences and continues until something else, or some other writing occurs.

These principles are, I think, in conformity with the spirit of the decisions in this state in respect to the execution of testamentary instruments.

3. The decree of the surrogate, admitting the will to probate, determines only the sufficiency of its execution. In respect to this question the domicil of the testator is unimportant in this case.

[NEW YORK GENERAL TERM, November 3, 1862. *Ingraham, Leonard* and *Peckham,* Justices.]