### PATTERSON ET AL. *v.* RANSOM.

WILL.—*Law of Place.*—Though the last will of a testator may have been executed and attested in another State, yet, if he die while domiciled in this State, the law of the latter must be applied by her courts in determining whether such will has been duly executed.

SAME.—*Execution of.—Attesting.—Intention of Testator.—Parol Evidence of.*— The execution of his last will, by the testator, having been attested by but one witness, such testator afterwards, at a different place, and in the absence of such witness, executed an endorsement upon the back of such will, reading, "The within is the basis on which I desire to have my affairs disposed of, should no other will be made by me," which endorsement was attested by another witness, to whom its contents had been made known, and the signatures to such will exhibited, by such testator. *Held,* in an action to contest the validity and resist the probate of such will, that it had not been executed according to law and is therefore invalid.

*Held,* also, that it can not be established by parol evidence, that the signature of such witness, to such endorsement, was intended by the testator, and executed by such witness, as an attesting of such will.

From the Floyd Circuit Court.

*J. H. Stotsenburg* and *J. C. Latimer,* for appellants.

*G. V. Howk, W. W. Tuley, C. Baker, O. B. Hord* and *A. W. Hendricks,* for appellee.

WORDEN, C. J.—This action was brought by the appellee, the widow of Hyatt C. Ransom, deceased, against the appellants, to contest the validity and resist the pro-

bate of the supposed last will of said deceased, on the ground that the same had not been duly executed. There was a trial of the cause by the court, resulting in a finding that the supposed will had not been duly executed, and judgment accordingly.

The appellants make no question, here, except that arising on the motion for a new trial.

The supposed will need not be set out, as the sole question presented is, whether it was duly executed. It was signed and attested as follows:

"Signed at Franklin, Tenn., March 11th, 1863.

"H. C. RANSOM,

"Witness,       "Captain A. Q. M., U. S. Army."

"C. F. WOOD."

It was admitted upon the trial of the cause, that Charles F. Wood, whose name appears as C. F. Wood, under the word "witness" in the paper, signed the paper, in the presence of Ransom, at his request, on March 11th, 1863, at Franklin, Tennessee; that, at the time of executing the writing, Ransom declared the same to be his will; that he was then and there of sound mind and competent to devise his property, and not under coercion; that Wood signed as such witness, after Ransom signed, and that the writing was all in the handwriting of said Hyatt C. Ransom.

On the back of the will was the following endorsement, viz.:

"FLINT, MICH., Oct. 21st, 1867.

"The within is the basis on which I desire to have my affairs disposed of, should no other will be made by me.

"H. C. RANSOM,

"Witness,       "Br'v't. Lt. Col. and Q. M."

"F. F. HYATT."

As F. F. Hyatt was the only witness who explained the endorsement on the back of the will, we set his evidence out in full. He said, in answer, as we suppose, to questions propounded:

" My name is Ferris F. Hyatt. I was born in 1825. I reside in Flint, Michigan. I supervise my own business affairs, and am president of The First National Bank of Flint. I knew Hyatt C. Ransom, from the time I was three years old. From that time, he was kept at my father's house, until he went to West Point, at the age of twenty-one years. I saw him last in life in September, 1872, at St. Paul, Minnesota. He was then an officer in the United States army, in the quartermaster's department. I have seen this will before (looking at the will). It is in his, Colonel Ransom's, handwriting, is signed by him, and by C. F. Wood as witness. I saw it in December, 1863. My signature is on the back of that paper. It was put there on October 21st, 1867, at my office, in Flint, Michigan, at the request of Hyatt C. Ransom, and in his presence. There was nobody else there. I had then had it in my possession from its date. He wrote the endorsement, signed it and wished me to witness it. Before I endorsed, I had seen both the signatures to the will. He called my attention to the fact, that, in signing this endorsement, I was witness, not only to the endorsement, but to the will. He opened the will and tapped where his signature was. I had told him maybe the will would not be valid with one witness. He was then of sound mind, and under no coercion. In October, 1868, I sent this will to Elmira, New York, to him, by his directions. I found it at Jeffersonville, Indiana, the Monday after his death, among his papers. It was with his notes, insurance policies and certificates of bank-stock. One of the insurance policies was for ten thousand dollars, on his life, in favor of the plaintiff, and dated one year before his death. His mother and mine were sisters. His sister, Elizabeth F. Ransom, of whom he ·was very fond, was a cripple, and had been supported by him ever since 1860. His relations to his brothers and sisters were very kindly. He knew all about Mrs. Ransom's separate property."

On cross-examination, he said;

Patterson *et al.* *v.* Ransom

"I found the will the Monday after his death. It was brought from the bank by Mr. Harry Sage. There were other papers in the bundle. I thought at the time that my signature cured the defect, but afterwards, at St. Paul, I told him that I feared it was imperfect; and afterwards I wrote to him at New Orleans, requesting him to make a will, but I don't know what became of the letter."

It is shown by the evidence, and, indeed, conceded by counsel on each side of the case, that the deceased, at the time of his death, was domiciled in Indiana. It is therefore properly assumed by the respective counsel, that the law of Indiana, alone, must be applied in determining whether the supposed will was duly executed.

Our statute provides that "No will except a nuncupative will shall affect any estate, unless it be in writing, signed by the testator, or by some one in his presence, with his consent, and attested and subscribed in his presence by two or more competent witnesses;" etc. 2 R. S. 1876, p. 575, sec. 18.

The statute requires that a will shall be attested and subscribed, in the presence of the testator, by at least two competent witnesses; and the question here is, whether the will was attested and subscribed as required.

Assuming that F. F. Hyatt can be regarded as having attested and subscribed the will as a witness thereto, then the attestation and subscription of the two witnesses were separated by an interval of time of over four years and a half, and by a space of several hundred miles. We are aware that there are many cases holding that the witnesses need not attest at the same time. But this has been changed for the better in England, by a statute which requires that the will shall be signed by the testator, in the presence of two witnesses, at one time. See 1 Greenl. Ev., sec. 272 and note 5.

It is said that "The attesting witnesses are regarded in the law as persons placed round the testator, in order that no fraud may be practised upon him in the execution

of the will, and to judge of his capacity." 2 Greenl. Ev., sec. 691; 1 Williams on Ex'rs , 5 Am. Ed., p. 60, note. By our law, as we have seen, two witnesses are required. They are to attest and subscribe the will. It is their province to judge of the mental soundness of the testator, and they are required, in order that no fraud be practised upon him. The statute contemplates that both shall witness and attest the same transaction. Separated, as these attestations were, both in time and space, each of the witnesses knew nothing of what transpired at the time of the attestation by the other. Wood, when he attested and subscribed the will, of course, knew nothing of the testator's mental condition, or the circumstances transpiring over four years thereafter, when Hyatt placed his name upon the will. If the will was ever executed at all, it was not until Hyatt placed his name upon it. And yet Wood witnessed nothing that then transpired. So, on the other hand, Hyatt witnessed nothing that transpired when Wood attested the will. If the case turned upon this point, we should feel under the necessity of examining the authorities closely before deciding that such attestation would be a compliance with the statute.

But we are of opinion that F. F. Hyatt can in no sense be regarded as having subscribed the supposed will.

He subscribed the endorsement on the back of the will, and nothing more. He seemed to be anxious, and, for aught that appears, properly so, that the will should be perfected. He had told the deceased that perhaps the will would not be valid with but one witness. When he put his name to the endorsement he thought that cured the defect, but afterwards, at St. Paul, he told the deceased that he feared it was imperfect; and still later he wrote the deceased at New Orleans, requesting him to make a will.

When the witness suggested to the deceased that perhaps the will would not be valid with but one witness, if the latter had desired the witness to subscribe the will as

a witness thereto, it is quite natural to suppose that he would have requested him to subscribe it as such witness. But instead of this, the deceased wrote the endorsement upon the back of the will, and the witness subscribed that. By the endorsement, the mind of the deceased seems to have been unsettled and undetermined, as to whether the will provided for such a final disposition of his property as he might desire to make. The endorsement says:

"The within is the basis on which I desire to have my affairs disposed of, should no other will be made by me."

The mind of the deceased seemed to contemplate that he might desire to make another and a different will. This is hardly such language as we might expect from the deceased, if he regarded what then transpired as a complete execution of the will, making a final disposition of his affairs.

But the question still remains, whether the witness subscribed the will when he subscribed the endorsement. He testified that the deceased called his attention to the fact, that, in signing this endorsement, he was witness, not only to the endorsement, but to the will; that "he opened the will and tapped where his signature was."

We can not regard the endorsement upon the will in any other light than as if it were an equivalent writing upon any detached paper. The only advantage of being upon the will is, that it clearly identifies the document to which it relates.

Any other writing to the same effect, clearly identifying the will to which it related, duly signed and witnessed, would have been in all respects as efficacious as that endorsed upon the will. Now, suppose the deceased, instead of writing upon the will, had written the same thing, in substance, upon a separate piece of paper, referring to the will so as to identify it, and the witness had subscribed it, as he did the endorsement, would the fact that the deceased called the attention of the witness to the proposi-

tion, that, in signing the paper, he was witness, not only to the writing, but to the will itself, make his subscription to the paper a subscription to the will? If so, the positive requirements of the statute as to the mode of executing wills may be dispensed with, and it will be sufficient to show that the supposed testator intended to execute a will, in the manner prescribed by law, but which he failed to do.

The counsel for the appellants, in a well prepared brief, filed in reply to the argument of the appellee, after discussing the admissibility of parol evidence, deduce from the authorities the following proposition, which seems to us to be correct:

" The true principle of law which runs through and harmonizes all these and other like cases, is this: Evidence, both written and parol, is admissible and competent to show that the requirements of the statute have been complied with; but it can not be made sufficient as a substitute for the requirements of the law."

The law requires a will to be attested and subscribed by two witnesses. Hyatt, in this case, did not subscribe the will. He subscribed merely the writing endorsed upon the will. And we can not substitute, in place of his subscription to the will, parol evidence that his subscription to the endorsement was intended as a subscription to the will.

In our opinion, the finding below was right, and the judgment must be affirmed.

The judgment below is affirmed, with costs.

Petition for a rehearing overruled at the May Term, 1877.

NOTE. HOWK, J., having been of counsel in the cause, was absent when it was considered.