Tennant, S.
The will in question was written on one side of four sheets of note paper, fastened together with mucilage, so as to make a strip of paper twenty-eight inches long and five inches wide. It commenced at the top of this strip of paper so fastened together, and was written continuously down to within two ruled lines or seven-eighths of an inch of the bottom, where the testator signed his name. There was not sufficient room immediately below the testator’s signature on the same page to write the attestation clause and for the witnesses to subscribe their names thereto. The attestation clause was, therefore, written on the back of the will and the attesting witnesses signed their names to the same. If the will were turned over as the leaf of a book, and the same were stretched out at length, unfolded, the attestation clause would appear at its commencement fourteen and three-quarter inches from the top and as ending seven and three-quarter inches from the bottom. The will as a whole appears to have been fully completed and to have finally ended immediately above the testator’s signature, and the space thereafter, between it and the attestation subscribed by the witnessed, is blank, nothing being therein written, and nothing is written after the signatures of the attesting witnesses. The paper upon which the will was written indicates that it was folded by bringing the top over to the bottom, and then the bottom to the top, thus making it of *155 the size of the sheets of note paper of which it was composed. When so folded, by turning it over as the leaf of a book, the attestation clause commences on the first line of the page and ends on the last line thereof. Indisputably, the testator, was at the time of the execution of the will of sound and disposing mind and memory, free from all restraint or undue influence. It is practically conceded also that all of the statutory requirements as to the manner of executing last wills and testaments were fully and literally complied with in this case, except that it is claimed by the contestants that the attesting witnesses did not subscribe their names at the end of the will. The only question, therefore, here presented for judicial determination is whether the statute was sufficiently complied with in the one particular of the attesting witnesses subscribing their names at the end of the will by the attestation clause written where it was and the witnesses signing the same where they did. The statute in relation to the manner of executing a last will and testament, is as follows:
“1. It shall be subscribed by the testator at the end of the will.
“2. Such subscription shall be made by the testator in the presence of each of the attesting witnesses, or shall be acknowledged by him to have been so made to each of the attesting witnesses.
“ 3. The testator, at the time of making such subscription, or at the time of acknowledging the same, shall -declare the instrument so subscribed to be his last will and testament.
“ 4. There shall be at least two subscribing witnesses, each of whom shall sign his name at the end of the will at the request of the testator.” Section 40, art. 3, tit. 1, chap. 6, pt. 2, Revised Statutes.
Under this statute the courts have, as I think very properly, held- that four distinct ingredients as therein declared must enter into and together constitute one entire complex substance, essential to a complete execution of a will; that the legislative intent thereby was to guard against frauds and uncertainty in the testamentary disposition of property, by prescribing fixed and certain rules by which to determine the validity of all instruments pur porting to be the wills of deceased persons, and that every one of the four requisites declared by the statute, above quoted, in contemplation of it is to be regarded as essential as another, and there must be a concurrence of all to give validity to the act, and that the omission of either is fatal. Remsen v. Brinkerhoff, 26 Wend., 325; Matter of Hewitt, 91 N. Y., 261; Matter of O'Neil, id., 516. While this is so, the general principle running through all- of the adjudged *156 eases is recognized and asserted that a literal compliance with the requirements of this statute is not essential, but that a substantial observance of them will be regarded sufficient. Gamble v. Gamble, 39 Barb., 373, 381, and cases there cited: Lyman v. Phillips, 3 Dem., 459, and cases there cited; Larabee v. Ballard, 1 Dem., 496; McMillen v. McMillen, 13 Week. Dig., 350; Baskin v. Baskin, 36 N. Y., 416: Matter of Beckett, 103 id., 167.
And so in the early leading case, Remsen v. Brinkerhoff (supra), Chief Justice Nelson, in commenting upon the practical application of these statutory requirements, said; “The only sure guide for the courts will be to look at the substance, sense and object of the law, and with the aid of these lights endeavor to ascertain if there has been a substantial compliance.” The guiding principle of the inquiry here, therefore, is not whether there has been a literal adherence to the precise formalities prescribed by the statute, but whether its requirements have been substantially observed. T have carefully examined all of the cases cited by the learned attorneys'of the contestant in their able and elaborate brief, but fail to find the precise question here presented, determined or passed upon in any of them.
The point considered and decided in Remsen v. Brinkerhoff (supra) was not whether the attesting witnesses had signed at the end of the will, but whether there had been upon the facts of that case a sufficient publication of the will to satisfy the requirements of the statute.
In McGuire v. Kerr (2 Bradf., 244) the will was written on the first and second pages of a sheet of letter paper. It closed on the second page, where it was signed by the testatrix, following which was a provision appointing the executors of the will, which was signed only by the two attesting witnesses. After this was added a provision, signed by the testatrix, directing the executors to pay all of her debts and funeral expenses before paying any of the legacies mentioned in the will. The surrogate in denying probate, among other things, said: That it was apparent that, the testatrix and the witnesses had not agreed upon any one point as the end of the will, because the testatrix bad by her signature affirmed one part as her will, and the witnesses by their signatures that another clause was to be added.
Matter of Hewitt (91 N. Y., 261) was a case where the will had been written on two sides of an irregular shaped piece of paper, about one-half of it upon one side and the other half upon the other side. The witnesses signed their names at the bottom of the first side and again at the top of the second side, following which was an important provision of the will. The deceased signed his name at the *157 end of the disposing portion of the instrument near the middle of the second side, and again at the bottom of the second side. The surrogate refused to hear the proof offered by the proponent on the ground that the witnesses had not signed at the end of the will, because an important provision disposing of property, signed by the testator, followed after their signatures. • His decree was affirmed by the general term and by the court of appeals.
Judge Earl, on page 264, says: “If the name of the testator had been written where the names of the witnesses are found, no one could properly claim that it was written at the end of the will. Here the signatures of the witnesses are followed by an important provision of the will disposing of property to his brother. They are not written at the end of the will, but manifestly near the middle thereof, and hence plainly from an inspection of the will the statute was not complied with.”
In the Matter of O’Neil (91 N. Y., 516), a printed blank, consisting of four pages, was used. The formal commencement was printed on the first page and the formal termination printed at the foot of the third page. The entire blank space was filled in in writing; and apparently for want of room a portion of a paragraph containing material provisions was carried over, and the paragraph finished at the top of the fourth page; the two portions were not sought to be connected by means of a reference or anything indicating their relation to each other. The name of the testator was written at the end of the printed form, and the names of the witnesses written below under the formal attestation clause on the third page, said important provisions on the fourth page following after.
Upon those facts the court held that neither the testator nor the witnesses had signed at the end of the will. There are several other adjudications, not cited by counsel, of a similar import. In Matter of Case (1 N. Y. State Rep., 152; 4 Dem., 124), the will was written on a half sheet of legal cap paper. The name of the testatrix was written at the end of the disposing part, then followed the attestation clause signed by the witnesses. An agreement of the devisee and legatee, signed by him, followed, and then the appointment of an executor, and then the testatrix again signed her name. Probate was denied because the witnesses had not signed at the end of the will.
Dennett v. Taylor (5 Redf., 561), and Sisters of Charity v. Kelly (67 N. Y., 409), like O’Neil Case (supra), were cases where the proponent sought to secure a holding that would evade the requirement of the statute, that the will should be subscribed at the end by treating a part which is written after the signatures as incorporated into the same by refer *158 ence (Tonnele v. Hall, 4 N. Y., 140), when such part was. not distinctly described in the will as a separate paper so to be incorporated.
It will be observed that all of the cases above cited were ones where some material addition or important provision of the will was written and appeared on the paper after either the signature of the testator, or the signatures of the attesting witnesses, or after both those of the testator and the witnesses. The. point involved in the case at bar was not considered or decided in any of those cases. Here, unlike any of those cases, no addition or provision or writing of any land appears after the signatures of the attesting witnesses, and nothing appears after the testator’s signature except the attestation clause and thé names of the witnesses.
The question here is, did the attesting witnesses subscribe their names at the end of the will? It was decided in Williamson v. Williamson (2 Redf., 449), that the signatures of the witnesses need not immediately follow that of the testator, but the attestation clause might intervene between the testator’s signature and those of the attesting witnesses, and in Cohen’s Estate (1 Tucker, 286), Younger v. Duffie (94 N. Y., 536), it was held that though the attestation clause, was not essential and was no part of the will, it was sufficient subscription at the end of the will if the testator signed his name after the attestation clause above those of the attesting witnesses. What is the end of the will ? In Matter of Gilman (38 Barb., 364), Justice Leonard said: “The end of the instrument, in writing, commences and continues until something else, or some other writing occurs.” In Matter of Taylor (5 Redf., 561), and Matter of Hurtt (20 Daily Reg., No. 85), it was said that the “end of the will comes when there is naught beyond and not till then.”
Judge Folger, in Sisters of Charity v. Kelly (supra), in speaking upon this point, used the following language: “Can we say that the end of the will has been found until the last word of all the provisions of it has been reached ? To say that where the name is there is the end of the will, is not to observe the statute. , * * * The instrument offered is to be scanned to learn where is the end of it as a completed whole; and at the end thus found must be found the name of the testator subscribed.”
The court of appeals in Younger v. Duffie (94 N. Y., 540-1), citing approvingly Matter of Gilman (supra), says: That “an instrument was signed at the end thereof when nothing intervenes between the instrument and the subscription.” Here the subscriptions of both the testator and the witnesses were after the end of the instrument as a *159 completed will; here nothing intervened after the instrument and before the subscription, and here too naught appears beyond. This brings us to a consideration of the immediate point of contention. Does the mere fact, that a considerable space left blank between the testator’s signature and the attestation subscribed by the witnesses, where there are no indications of fraud, call for an adjudication that the attesting witnesses have not subscribed their names at the end of the will, so as to destroy the testamentary act ? I think the question is answered in the negative, and adverse to the contestant by the cases of Matter of Gilman (1 Redf., 354; affirmed 38 Barb., 364), and Hitchcock v. Thompson (6 Hun, 279).
In the case of Matter of Gilman (supra), the will and codicil were written on one side of several sheets of foolscap paper, fastened together in book form by a silk ribbon passed through the centre of the paper. The paper was written on so as to leave alternate pages blank. The codicil followed the will and ended four lines above the bottom of the second page, written on where the testator signed his name, leaving an insufficient space for the attestation clause and the signatures of the witnesses. The attestation clause was written on the second page, after the testator’s signature, seven lines from the top, so that a blank space of three lines on the page below the testator’s signature, the whole of the page next succeeding and seven lines of the third page existed between the testator’s signature and the commencement of the attestation clause. The objection was raised that in view of this long space after the signature of the testator and the attestation and subscription by the witnesses, the will had not been executed as required by the statute, in that the attesting witnesses had not subscribed their names at the end of the will. But the surrogate admitted the will to probate. This case was appealed to the general term where the decree of the surrogate was affirmed.
Justice Leonard, who wrote the opinion of the general term among other things said: “An instrument is signed at the end when nothing intervenes below the instrument and the subscription. Who shall undertake, judicially, to say that the subscription shall be one-eighth of an inch, half an inch, two inches, or ten inches from the last fine of the instrument. The distance from the last fine has not been fixed by the statute. The place named in the statute is the end. * * The end of the instrument in writing commences and continues until something else or some other writing occurs. These principles are, I think, in conformity with the spirit of the decisions in respect to the execution of testamentary instruments.”
*160 The blank space after the testator’s signature and the attestation was very much greater in the case last above-cited than in the will here in question. Still the will was upheld. It seems to me that the Gilman Case covers this one and is decisive of it. It is not for me to question the soundness of the views or the reasoning of the decision. It is enough for me to say that it is the determination of a higher tribunal, and though it was decided a quarter of a century ago, so far as my examination has extended has never been overruled or even seriously criticised by later adjudications.
Hitchcock v. Thompson (6 Hun, 279), was a case where the will was drawn upon a sheet of paper fastened together at the ends in common use among lawyers. Only the first and third pages were written upon, the second being left blank. It was signed by the testator at the bottom of the third page, where the attestation clause was placed at the top of the second page and signed by the witnesses. The will'was rejected by the surrogate of Westchester county, but the general term reversed the decree and in doing so among other things said, in language very* appropriate here: “The witnesses had not room to place the attestation clause on the page where the testator signed - his name, and instead of folding back the will in the way the paper was folded when the first page of the will was written, and writing out the attestation clause on the top of what would then have been the fourth page of the paper, they left the paper folded as it was when the testator signed at the foot of the third page, and turned the entire sheet over endways and wrote the attestation clause at the top of the page. * * * It is a mere question of folding a paper. There is no fraud. The will was duly executed. The testator signed at the end of the will. All of the formal requisites were complied with.”
These observations of the court are pertinent to the manner this will was attested. Here, too, there was not room on the same page below the testator’s signature to write the attestation clause and for the witnesses to sign it. And here, too, it may be said “it is a mere question of folding the paper.” As above stated, the will was written on a strip of paper twenty-eight inches long, five inches wide. It was necessary to write the attestation clause and for the witnesses to sign it some where on the back of the paper. As the paper lay' upon the table stretched out, when the testator signed it, surely it was a clumsy document and an awkward one to fold or to turn over and make the endorsement. If a lawyer had been present in charge of the execution doubtless he would have turned the paper over, as lawyers do, and written the attestation clause at *161 the top of the page. But the manner that the attestation was written on the will and the manner it appears to have been folded, show that the layman who drafted the will and attended to its execution had another way of turning the paper over.’ The long strip of paper was apparently folded by bringing the top over to the bottom, and then it was turned over as the leaf of a book. Thus folded and turned over, the attestation clause commences on the first Ene of the page as the paper would lie on the table before the writer, and before the witnesses when they subscribed their names. Hence, it is easy enough to account for the location of the attestation clause on this will and the signatures of the witnesses thereto where they appear, and at the same time assume that the testator and the attesting witnesses thought at the time that they were attesting the will as near the testator’s signature as they could.
A painstaking examination of the case has led me to the conclusion that the instrument here offered should be admitted to probate as a properly executed last will and testament, and a decree should be entered accordingly, the proponent’s costs and disbursements to be paid from the estate of the deceased.