[Sac. No. 1302. In Bank.—April 3, 1905.]

In the Matter of the Estate of HENRY SEAMAN, Deceased. LOUISA ALBRIGHT et al., Appellants, v. A. W. NORTH, Administrator, etc., et al., Respondents.

WILLS—IMPROPER EXECUTION—INDORSEMENT UPON FOLDED INSTRUMENT.—A document purporting to be a last will and testament, written upon a printed form or blank of four pages, having an unfilled and unsigned attestation clause on the third page, and of which the fourth page had merely a place for blank indorsements when folded, and which was merely signed beneath the scrivener's title and blank form for date and filing, with the testator's name, and names of two witnesses, was not a will "subscribed at the end thereof" by the

testator and attesting witnesses as required by law, and probate thereof was properly denied.

ID.—END OF WILL.—The will at whose end the name is to be subscribed is not the sheet of paper or other material upon which the testamentary dispositions are written, and the end thereof is not the foot or physical end of the sheet of paper, but is the physical termination of the testamentary dispositions which constitute the will.

ID.—PLACE OF SIGNATURES—SUBSTANTIAL COMPLIANCE WITH STATUTE ESSENTIAL.—While the signature at the end of the will may not necessarily be in immediate juxtaposition with the concluding words of the will, yet it must be so near thereto as to reasonably indicate an authentication of the instrument as a will, and to constitute a substantial compliance with the requirement of the statute.

ID.—OBJECT OF STATUTE TO PREVENT FRAUD—CONSTRUCTION OF STATUTE —ABSENCE OF FRAUD IMMATERIAL.—The purpose of the statute requiring the subscription to be at the end of the will is not only to indicate a testamentary disposition, but also to prevent the opportunity for fraudulent additions or interpolations between the testamentary matter and the signature, and the statute should be so construed as to accomplish this purpose. The failure to comply with the statute intended for that purpose cannot be excused by showing that in the particular case there was no fraud.

ID.—INTENTION OF TESTATOR NOT MATERIAL—PAROL EVIDENCE INADMISSIBLE.—For the purpose of determining whether the will has been properly executed as required by law, the intention of the testator in so executing it is entitled to no consideration; whether the deceased intended to execute his will in conformity with the statute cannot be shown by parol or extrinsic evidence, nor can parol evidence be admitted to show that the testator intended the space signed by him to be the end of the will, if upon an inspection of the instrument it appears that it is not in fact at the end.

ID.—TEST OF SIGNATURE. — [Per Beatty, C. J., Angellotti, J., and Shaw, J.] The true test to determine whether a decedent has subscribed his name at the end of a will is to take the document as it left his hand and then, disregarding the signatures of the witnesses and all evidence *aliunde*, to see whether it is apparent that his name was placed where it appears for the purpose of execution.

APPEAL from a judgment of the Superior Court of Yolo County. E. E. Gaddis, Judge.

The facts are stated in the opinion of the court.

Phil Bruton, for Appellants.

The signature need not follow the end of the testamentary words. Any blank space may intervene. (*In re Morrow's*

*Estate,* 204 Pa. St. 479; *In re Dager's Will,* 47 Hun, 127;
*Derinzy* v. *Turner,* 1 Irish Chancery Rep. 341; *Goods of
Archer,* 40 L. J. P. 80; *Goods of Fuller,* L. R. Probate
(1892) 377; *Goods of Catherine Rice,* 5 Irish Eq. (1870)
176; *Goods of Williams,* 35 (N. S.) L. J. Rep. 2; *Goods of
Moore,* 70 (N. S.) L. J. Rep. 16; *Hunt* v. *Hunt,* 35 (N. S.)
L. J. Rep. 135; *Gilman* v. *Gilman,* 1 Redf. Sur. 354, 356;
*Matter of Gilman,* 38 Barb. 364.)

George R. Lovejoy, and G. V. Martin, for A. W. North,
Administrator, Respondent, and N. A. Hawkins, for William
Brinck, Respondent.

The object of the legislature in requiring the subscription
at the end of the will is to prevent fraud. (*Baker* v. *Baker,*
51 Ohio St. 217; *Glancy* v. *Glancy,* 17 Ohio St. 134; *Soward*
v. *Soward,* 1 Duval (Ky.) 133; *In re Conway's Will,* 124
N. Y. 455, 457; *In re Whitney's Will,* 153 N. Y. 259;[1] *In re
Fult's Will,* 42 App. Div. 593, 59 N. Y. Supp. 756; *Younger*
v. *Duffie,* 94 N. Y. 535;[2] *Sisters of Charity* v. *Kelly,* 67 N. Y.
409-416; *In re Cohen's Will,* 1 Tuck. Sur. (N. Y.) 286;
*McGuire* v. *Kerr,* 2 Bradf. 244, 255; *Smee* v. *Bryer,* 1 Rob.
Ecc. Rep. 618; *In re Walker,* 110 Cal. 389, 390;[3] 22 Am. &
Eng. Ency. of Law, 161.)

E. M. North, for H. H. North, Guardian, etc., Respondent.

The statute requiring subscription at the end of the will
must be strictly complied with. (*In re Walker,* 110 Cal. 387,
390, 395;[3] *Estate of Blake,* 136 Cal. 312; *Public Administrator*
v. *Watts,* 1 Paige, 347, 368; *In re Whitney's Will,* 153 N. Y.
259;[1] *In re O'Neil's Will,* 91 N. Y. 516, 521; 27 Hun, 130;
*In re Blair's Will,* 84 Hun, 58; 32 N. Y. Supp. 845, 846;
*McGuire* v. *Kerr,* 2 Bradf. 249, 255-256; *Sisters of Charity*
v. *Kelly,* 67 N. Y. 409, 415; *Appeal of Wineland,* 118 Pa. St.
37, 41.[4]) The intention of the legislature and not that of the
testator controls the question. (*In re Walker,* 110 Cal. 387,
396-397;[3] *In re Conway's Will,* 124 N. Y. 455, 462; *In re
Andrews's Will,* 162 N. Y. 15;[5] *In re Fult's Will,* 42 App. Div.
593; 59 N. Y. Supp. 756.)

[1] 60 Am. St. Rep. 616.          [4] 4 Am. St. Rep. 571.
[2] 46 Am. Rep. 156.            [5] 76 Am. St. Rep. 294.
[3] 52 Am. St. Rep. 104.

George Clark, and W. A. Anderson, for Margaret Walsh, Respondent.

The signature indorsed on the folded instrument was not at the end of the will. (*In re Walker*, 110 Cal. 395;[1] *James* v. *Patten*, 6 N. Y. 9;[2] *Soward* v. *Soward*, 1 Duval (Ky.) 126; *Patterson* v. *Ransom*, 55 Ind. 402; *Warwick* v. *Warwick*, 86 Va. 596; *Ramsey* v. *Ramsey's Executors*, 13 Gratt. 664;[3] *Roy* v. *Roy's Executors*, 16 Gratt. 418;[4] *In re Conway's Will*, 124 N. Y. 455.) The word "subscribe" imports a signature at the end of or under a written or printed engagement. (Bouvier's Law Dictionary; Black's Law Dictionary; Sweet's Law Dictionary; Rapalje's Law Dictionary.) The signatures at the end of a will must leave no considerable or unreasonable intervening space. (Schouler on Wills, sec. 312; Redfield's Law and Practice of Surrogate Courts, 158; McClelland's Probate Practice, 13; Williams on Executors, p. 68; *In re Fult's Will*, 42 App. Div. 593; 59 N. Y. Supp. 757; *In re Hewitt's Will*, 91 N. Y. 261.) The purpose of the requirement is to insure the genuineness of the will, (*In re Booth's Will*, 127 N. Y. 109; *Soward* v. *Soward*, 1 Duval (Ky.) 126), and to prevent fraudulent interpolation before the signature after execution. (Paige on Wills, sec. 185; Schouler on Wills, sec. 312; Williams on Executors, p. 107; *Baker* v. *Baker*, 51 Ohio St. 217; *Glancy* v. *Glancy*, 17 Ohio St. 134; *Younger* v. *Duffie*, 94 N. Y. 535;[6] *McGuire* v. *Kerr*, 2 Bradf. 226; *In re Donner's Will*, 37 Misc. Rep. 57; 74 N. Y. Supp. 828.)

THE COURT.—A document purporting to be the last will and testament of Henry Seaman, deceased, was presented to the superior court, and an application for its probate was denied upon the ground that it had not been properly executed, in that the name of the testator was not subscribed at the end thereof. From the judgment thus entered the present appeal has been taken.

The instrument was written upon a printed form or blank consisting of four pages folded in the middle like ordinary legal cap. Upon the upper portion of the first page was a

[1] 52 Am. St. Rep. 104.          [4] 84 Am. Dec. 696.
[2] 55 Am. Dec. 380.          [5] 24 Am. St. Rep. 429.
[3] 70 Am. Dec. 438.          [6] 46 Am. Rep. 156.

printed heading and introduction, occupying about one fourth of the page; in the printed form the remainder of that page and the entire second page were left blank. The dispositive parts of the will were written upon the blank portion of the first page and about one fourth of the blank portion of the second page, and at the close thereof a line was drawn in red ink transversely to the bottom of the second page. At the top of the third page there was printed a form for the appointment of an executor, and a clause revoking all former wills, and immediately after this a testimonium clause, underneath which, and extending to a little below the middle of the page, was printed an attestation clause. The blanks left for the name of an executor and for the attestation of the will were left unfilled. The remainder of the third page and . the first or upper half of the fourth page are blank. The printed form was prepared to be twice folded from the bottom to the top, and across the face of the paper as thus folded, and at the top thereof, were the printed words: "The Last Will And Testament of," under which the scrivener had written "Henry Seaman." Blank forms for a date and for filing the instrument with the clerk were printed underneath this—the whole occupying the upper half of this outside face of the paper when folded. Underneath this printed matter was written "Henry Seaman," and underneath his name the word "witness" and underneath that the names "M. O. Wyatt, J. H. Wright." The remainder of - the fourth page was blank.

It was shown at the hearing that the decedent had written his name at that place in intended execution of his will, and that at his request Messrs. Wyatt and Wright had signed their names as witnesses thereto. It was also shown that, with the exception of these signatures, the instrument is in the same condition as it was when the decedent signed his name thereto.

The right to make a testamentary disposition of one's property is purely of statutory creation, and is available only upon a compliance with the requirements of the statute. The formalities which the legislature has prescribed for the execution of a will are essential to its validity, and cannot be disregarded. The mode so prescribed is the measure for the exercise of the right, and the heir can be deprived of his

inheritance only by a compliance with this mode. For the purpose of determining whether a will has been properly executed, the intention of the testator in executing it is entitled to no consideration. For that purpose the court can consider only the intention of the legislature, as expressed in the language of the statute, and whether the will as presented shows a compliance with the statute. (*Estate of Walker*, 110 Cal. 387.[1])

Section 1276 of the Civil Code requires every will other than nuncupative or holographic to be "subscribed at the end thereof," by the testator in the presence of two attesting witnesses, each of whom must in his presence and at his request sign his name as a witness "at the end of the will." This section is from the revised statutes of New York, adopted by that state in 1830. These provisions were incorporated into the Civil Code prepared for adoption by that state by David Dudley Field, and in their report of a Civil Code to the legislature of 1871, the code commissioners of this state refer to this code as the source of the section. In considering the section the decisions of that state upon the same question are therefore entitled to great consideration. A similar statute was enacted in England in 1837 (Stats. 1 Vict. c. 26), but the decisions under that statute as to what constitutes the "end" of a will are inconsistent and contradictory. In the earlier cases the statute received a very liberal construction in reference to the amount or extent of blank space that might be left between the termination of the will and the signature of the testator, but afterwards the same judge who gave this construction (as did also the privy council in affirming his judgment) stated that he felt it necessary to construe the act more strictly, on the ground that the provision was intended to prevent any addition being made to the will after the deceased had executed it (*Smee* v. *Bryer*, 1 Rob. Ecc. 616; Williams on Executors, *67); and the statute was therefore construed as requiring the name to be written immediately after the termination of the testamentary provisions, without any space whatever between them. It was in view of these different constructions of the statute that, in 1852, Parliament passed an explanatory act (Stats. 15 Vict. c. 24) known as "Lord St. Leonard's Act," which provided that the will

[1] 52 Am. St. Rep. 104.

should be valid "if the signature be so placed at or after or following or under or beside or opposite to the end of the will, that it should be apparent on the face of the will that the testator intended to give effect by such his signature to the writing signed as his will," and that no such will should be affected by the circumstance that "a blank space shall intervene between the concluding end of the will and the signature," etc.; thus permitting an inquiry into the intention of the testator, contrary to the rule on that subject in this state. The provisions of this act are so directly opposed to section 1276 of the Civil Code, that the decisions thereunder are not entitled to any consideration in interpreting the section. (*Estate of Walker*, 110 Cal. 387.[1] See, also, *Matter of Conway's Will*, 124 N. Y. 455.)

The provision that the will must be subscribed at the end thereof requires the testator's name to be written at the termination of the testamentary provisions which he makes in the instrument. The "will" at whose end the name is to be subscribed is not the sheet of paper or other material upon which these testamentary provisions are written, but it is the declaration which the testator has written thereon for such testamentary disposition, and the "end thereof" is not the foot or physical end of the sheet of paper upon which the "will" is written, but is the physical termination of the testamentary provisions which constitute the will. "The act of authentication must take place at the termination of the testamentary disposition." (*McGuire* v. *Kerr*, 2 Bradf. 244.) "To say that where the name is there is the end of the will is not to observe the statute. That requires that where the end of the will is there shall be the name. It is to make a new law to say that when we find the name there is the end of the will. The instrument offered is to be scanned to learn where is the end of it as a completed whole, and at the end thus found must the name of the testator be subscribed." (*Sisters of Charity* v. *Kelly*, 67 N. Y. 409; *Matter of O'Neil's Will*, 91 N. Y. 522; *Matter of Andrews's Will*, 162 N. Y. 1.[2])

The requirement that the name shall be subscribed "*at*" the end of the will is not satisfied by having that name written at any place "after" the termination of the written matter,

[1] 52 Am. St. Rep. 104.        [2] 76 Am. Rep. 294.

irrespective of the relation which such place bears to the concluding portion of the will. This provision does not, however, of necessity require that it shall be in immediate juxtaposition with the concluding words of the instrument, but that it shall be so near thereto as to afford a reasonable inference that the testator thereby intended to indicate an authentication of the instrument as a completed expression of his testamentary purposes. It must appear upon the face of the instrument not only that he intended to place it at the end of his testamentary provisions, but that he has in fact placed it in such proximity thereto as to constitute a substantial compliance with this requirement of the statute. While a slight space, such as a single line, or even more, might be left blank between the written matter and the name without impairing the validity of the will, yet to leave blank an entire page between the two would indicate a disregard of the requirements of the statute, whether resulting from ignorance or intention, which should prevent its admission to probate. (See *Soward* v. *Soward,* 1 Duval (Ky.) 126.)

Appellants have cited the case of *Gilman's Will,* 38 Barb. 364, in which the written matter of the will terminated four lines above the bottom of the page where the testator signed his name, and in which the court said: "An instrument is signed at the end when nothing intervenes between the instrument and the subscription. The place named in the statute is the end. The end of an instrument in writing commences and continues until something else or some other writing occurs." This language may have been appropriate to the will then before the court, but as a construction to be given to the statute it does not meet with our approval, and is moreover inconsistent with the construction given in the above cases cited from the court of appeals of that state. Particularly do we dissent from the definition of "end" as given in the last sentence of the quotation.

The formalities which the legislature has prescribed for the execution of wills are to provide against false and fraudulent wills, and to afford means of determining their authenticity. A very evident purpose of requiring the testator's name to be subscribed at the end of the will is not only that it may thereby appear upon the face of the instrument that the testamentary purpose which is expressed therein is a

completed act, but also to prevent any opportunity for fraudulent or other interpolations between the written matter and the signature. (*McGuire* v. *Kerr*, 2 Bradf. 244; *Matter of O'Neil's Will*, 91 N. Y. 516; *Matter of Andrews's Will*, 43 App. Div. 394; s. c. affirmed, 162 N. Y. 1;[1] *Matter of Hewitt's Will*, 91 N. Y. 261; *Matter of Conway's Will*, 124 N. Y. 455; *Soward* v. *Soward*, 1 Duval (Ky.) 126; *Ramsey* v. *Ramsey*, 13 Gratt. 664;[2] *Warwick* v. *Warwick*, 86 Va. 596; *Wineland's Appeal*, 118 Pa. St. 37.[3]) "The statutory provision requiring the subscription of the name to be at the end is a wholesome one, and was adopted to remedy real or threatened evils. It should not be frittered away by exceptions" (*Sisters of Charity* v. *Kelly*, 67 N. Y. 409); "or by judicial construction" (*Matter of Whitney*, 153 N. Y. 259[4]); "or defeated by lax interpretation" (*Glancy* v. *Glancy*, 17 Ohio St. 134). "The purpose of the law which requires the subscription to be at the end of the will is to prevent fraudulent additions to a will before or after its execution, and the statute should be so construed as to accomplish this purpose." (*Younger* v. *Duffie*, 94 N. Y. 535.[5])

It is immaterial that there is no charge of fraud in any particular case. A failure to comply with the formalities required by a statute enacted for the prevention of fraud is not excused by showing that in the particular case under consideration there was no fraud. The statute in question was enacted to protect the wills of the dead from alteration. If opportunity for such alteration is permitted the fraud may be so deftly accomplished as to prevent its discovery, and for this reason the construction to be given the statute should be such as will control the execution of all wills. "The legislative intent was doubtless to guard against fraud and uncertainty in the testamentary disposition of property by prescribing fixed and certain rules by which to determine the validity of all instruments purporting to be wills of deceased persons." (*Matter of O'Neil's Will*, 91 N. Y. 520.)

It is true, as suggested by the appellant, that there is the same opportunity for fraudulent interpolations in the will if the testator should leave sufficient space therefor between the

[1] 76 Am. St. Rep. 294.               [4] 60 Am. St. Rep. 616.
[2] 70 Am. Dec. 438.                   [5] 46 Am. Rep. 156.
[3] 4 Am. St. Rep. 571.

several items of his will. But it is a sufficient answer to this suggestion that the form in which the provisions of a will are drafted is no part of its execution, and that the legislature has not attempted to prescribe the form in which the testator shall express his testamentary purpose, or in which the will shall be drafted, but only the form in which it is to be "executed and attested." (See *Heady's Will*, 15 Abb. Pr. N. S. 211; *Matter of Collins*, 5 Redf. (N. Y.) 20.) In *Estate of Blake*, 136 Cal. 306,[1] the testator left a blank space of several lines between the items in which he disposed of his property and the items appointing an executor and revoking his former will. These last items were, however, testamentary provisions (*Sisters of Charity* v. *Kelly*, 67 N. Y. 415), and as they constituted a part of his will the end thereof was not reached until they had been written upon the paper, and as his name was subscribed to the testamentary clause which immediately followed these items it was held that it was subscribed at the end of the will.

A question similar to the one involved herein was presented in *Soward* v. *Soward*, 1 Duval (Ky.) 126. The statute of Kentucky required the witnesses as well as the testator to "subscribe" the will with their names, which the courts of that state construed to mean that they should write their names at the close of the will. In the will then before the court the witnesses wrote their names, as did the testator in the present case, on the outside or fourth page of the sheet after it had been folded, and across it as so folded. The court held that this was not a compliance with the statute, saying: "So far from subscribing their names to the will, it may be said with much more propriety and accuracy of speech that they merely indorsed the paper enveloping and inclosing the will without any accompanying writing or memorandum to indicate the purpose of the indorsement, or showing any connection whatever between the indorsement and the will." In *Roy* v. *Roy*, 16 Gratt. 418,[2] the sheet of paper upon which the will was written was folded in the form of a letter and the words "David M. Roy's Will" were indorsed upon the back in the handwriting of the deceased at about the middle of the third page when the paper was unfolded. His name was not signed at the end of the writing.

[1] 89 Am. St. Rep. 135.          [2] 84 Am. Dec. 696.

The court held that it was not entitled to probate, saying: "It is an unusual mode of signing or authenticating a paper as a concluded act by indorsing the name of the person executing it on the back. Such indorsement is usually made as a label or mark to distinguish it from other papers, and probably it never occurred to the deceased that it was to have any other function in this case." The same rule was followed in *Warwick* v. *Warwick*, 86 Va. 596, and *Patterson* v. *Ransom*, 55 Ind. 402.

Whether the deceased intended to execute his will in conformity with the requirements of the statute cannot be shown by parol or extrinsic evidence. Parol evidence cannot be admitted to show that a testator intended the space signed by him to be the end of the will, if upon an inspection of the instrument it appears that it is not in fact at the end. Evidence will not be received for the purpose of showing that he intended to comply with the requirements of the statute if it appears upon the face of the instrument that he had not in fact so complied. It must appear upon the face of the will itself that its physical execution is in accordance with these requirements. (*Matter of Hewitt's Will,* 91 N. Y. 261; *Warwick* v. *Warwick,* 86 Va. 596; *Patterson* v. *Ransom,* 55 Ind. 402.)

Under these considerations it must be held that the testator did not comply with the requirements of the statute in the execution of his will, and the judgment of the superior court is therefore affirmed.

BEATTY, C. J., concurring.—I concur, and desire only to note a point strongly urged in the argument of counsel for appellants, but not specially adverted to in the opinion of the court. He insists that section 1276 of the Civil Code, like the rest of its provisions, must be liberally construed "with a view to effect its objects and promote justice." (Civ. Code, sec. 4.) I fully agree with him on this proposition, but I apply it differently. His argument is in effect that we should give a liberal construction to wills which deviate from the statute in the mode of their execution for the purpose of sustaining them, whereas a proper application of the principle requires us to give a liberal construction and full effect to every provision of the statute designed to prevent the probate

of spurious wills, although in so doing we may in a particular
instance defeat an honest attempt on the part of a decedent to
make a testamentary disposition of his estate.   The evil of
occasionally defeating such an attempt is far less serious
than the establishment of a precedent which would open the
door to the frauds which the statute was designed to pre-
vent.   Every statute of frauds is designed to promote justice
by requiring wills and contracts to. be executed with such
formalities and *indicia* of genuineness as to make simulated
and fraudulent writings of the classes defined impossible, or
at least very difficult.   Such statutes in the long run pro-
mote justice—which is their sole object—by shutting out op-
portunities of fraud.   Where they defeat one honest purpose
they prevent unnumbered frauds, which in their absence
would be feasible and measurably safe.   It would not, there-
fore, be a proper application of the principle invoked to
weaken by construction the requirements. of our statute pre-
scribing the requisites of a valid will.   By so doing we should
no doubt be dealing most liberally with the efforts of de-
cedents who have disregarded the law, but we should not be
construing the law liberally to effect its objects.   And unless
we are to set ourselves up as better judges of the true policy
of the law than the legislature, we should not be promoting
justice.

As our law now stands, two witnesses are sufficient, so far
as witnesses are concerned, for the due authentication of a
will.   Suppose that the law should be so changed as to re-
quire three witnesses, and suppose a will offered for probate
attested by two only.   If they were perfectly trustworthy
witnesses every one might be entirely satisfied of the gen-
uineness of the instrument, but could any court admit it
to probate?   Our law does not require three witnesses, but
in place of a third witness it requires something else which
itself is a test of authenticity,—viz., the signature of the
alleged testator *at the end of the will,* and this can no more
be dispensed with than the third witness if three witnesses
were required.

In determining what is the end of a particular will no doubt
the principle of liberal construction may be applied, but
even liberality has its limits.   Counsel for appellants is, it is
true, able to cite us to a number of cases which sustain his

contention that a signature is at the end of a will, no matter how far from the end of the writing, if it is not followed by any dispositive clause.   I think, however, that the cases which hold otherwise, and especially the New York cases, are supported by the better reason.   The true test to determine whether a decedent has subscribed his name at the end of a will is to take the document as it left his hand, and then, disregarding the signatures of the witnesses, and all evidence *aliunde*, to see whether it is apparent that his name was placed where it appears for the purpose of execution.

Applying that test in the present instance, it is very far from being apparent to me that the name of Henry Seaman was indorsed on the back of this will for the purpose of executing it.   In the course of my experience I have seen hundreds of wills, deeds, and other written contracts; I have frequently seen the names of the parties indorsed on the back of such papers before execution, and I cannot recall a single instance in which any of such documents was so indorsed for the purpose of executing it.   The testimony in this case shows that in fact Henry Seaman attempted to execute his will in that way, but this testimony cannot be considered for the purpose of determining whether the statute has been complied with.   And, indeed, what the testimony shows is that he wrote his name on the back of the paper because of his opinion that his signature at the end of the will was not necessary.   It is unfortunate to the intended objects of his bounty that he was not better informed, but it would be more unfortunate if the courts out of sympathy for them should relax the wholesome stringency of the law governing the authentication of wills.

ANGELLOTTI, J.—I concur.   I am of the opinion that the true test by which to determine whether the requirement of our law that the testator shall subscribe his name at the end of the will has been complied with, and the will, therefore, in that respect executed, is as stated in the concurring opinion of the chief justice.   To comply with the statute, the name must, of course, be subscribed after the termination of the testamentary provisions, and where it is so placed the mere extent of space between such termination and the subscription ought not to affect the question as to whether the statute

has been complied with, if the document on its face, disregarding the signatures of the witnesses and all evidence *aliunde,* fairly indicates that the name was so placed by the testator as a subscription and for the purpose of execution. The extent of space is, of course, material upon the question as to what the document does indicate upon its face.

The document in question does not measure up to this requirement.

Shaw, J., concurred.